UNITED STATES of America, Appellee,

v.

Steven A. RAMSEY, Appellant.

No. 92–3883.

United States Court of Appeals,
Eighth Circuit.

Submitted April 16, 1993.

Decided July 16, 1993.

David P. Chamberlain, Liberty, MO, argued, for appellant.

William L. Meiners, Kansas City, MO, argued, for appellee.

Before FAGG, MORRIS SHEPPARD ARNOLD, Circuit Judges, and STUART,[*] Senior District Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Steven Ramsey appeals his convictions for conspiring to distribute cocaine base and distributing cocaine base in violation of 21 U.S.C. §§ 841, 846, and for using a firearm in relation to a narcotics trafficking offense in violation of 18 U.S.C. § 924(c)(1). He was sentenced to a total of 147 months and ordered to serve a five-year supervised release period and pay a $1,000 fine. This appeal followed.

## I.

Detective James Eddins of the Kansas City, Missouri, Police Department was working undercover when he purchased crack cocaine from three men at a residence. The purchase took place during the day and Eddins observed one of the three standing at the door inside an enclosed porch and holding a chrome-plated revolver during the transaction. Four days later, Detective Eddins again purchased cocaine at the same residence, this time from the other two men, Steven Love and Thomas Humphreys. When a search warrant was served upon the residence the next day, Ramsey was identified across the street as fitting a description given by Detective Eddins of the man he saw holding the gun during the first drug transaction.

Shortly thereafter, Detective Eddins viewed a photo line-up, in which he identified Ramsey as the man who held the gun during the first transaction. Prior to trial, Ramsey's attorney notified the government that a man named Anthony Norwood, who lived in Kansas City, was a "look-alike" to Ramsey. In the presence of Ramsey's attorney, Detective Eddins identified a photograph of Anthony Norwood as being the man that he saw holding the gun at the first drug transaction. When shown the original photo line-up, however, the detective stated that the photograph of Ramsey more closely resembled the man who held the gun on August 30, 1991. Both Norwood and Ramsey were therefore placed in a live line-up, and Eddins positively identified Ramsey. Testimony describing the line-up and a videotape of it were admitted over the objection of the defense.

Ramsey argues that the district court erred in denying his motion for a judgment of acquittal, and, in the alternative, for a new trial, based on alleged errors in admitting evidence of the live lineup, in admitting evidence of Ramsey's alleged prior bad acts, and in denying Ramsey's attempt to introduce evidence of statements made by alleged co-conspirators. Ramsey also asserts that the district court erred in calculating his criminal history under the Sentencing Guidelines.

## II.

To sustain a challenge to an out-of-court line-up, the defendant must first show that the procedure employed was impermissibly suggestive. If it was, the court must then determine whether, under the totality of the circumstances, the suggestive procedures created a very substantial likelihood of irreparable misidentification. *United States v. Donahue*, 948 F.2d 438, 441 (8th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 1600, 118 L.Ed.2d 314 (1991), *citing Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The *Manson* Court also identified particular considerations to be weighed in reviewing a line-up challenge, such as the

opportunity of the witness to view the defendant, the witness's degree of attention, the witness's level of certainty, the time between the crime and the confrontation, and the accuracy of the description. *Manson* at 114–15.

When Ramsey was placed in the April 7 line-up, he was allowed to choose his position in the line-up and was given disposable clothing to wear that was identical to what other participants wore. Ramsey nevertheless argues that the line-up was not objectively presented to Detective Eddins. Ramsey first contends that he was the only participant ordered to remove visible clothing from beneath the cover clothing for the line-up and that he alone wore shoes with the laces inserted. He argues that Detective Eddins, who admitted to being familiar with arrest and incarceration procedures including the removal of prisoners' shoelaces, would have noticed Ramsey's shoelaces. Ramsey further protests that, while a detective reminded Anthony Norwood to remove his shoelaces so that he would not stand out, no one did the same for Ramsey. Ramsey therefore maintains that those conducting the line-up caused him to be distinguishable to Detective Eddins. The government argues that these differences were inconsequential because the detective testified at trial that he did not notice either the clothing or shoelaces.

■ We note that the magistrate judge who presided at the hearing on the motion to suppress this identification evidence did not address the matters of the defendant's dress and shoelaces, nor did the district judge in his order speak to them. The magistrate did conclude, however, that the line-up procedure was not unduly suggestive and we are not prepared to say that that conclusion was incorrect. We note that Detective Eddins testified at trial that he did not even notice the dress or shoelaces. We observe, too, that Detective Eddins's in-court identification of the defendant corroborated his previous out-of-court identifications and, under the circumstances presented by this record, renders altogether harmless any error in admitting the line-up testimony. The jury was thoroughly and correctly instructed by the trial judge on how to evaluate the identification evidence. We find no error here.

## III.

■ Ramsey next maintains that the court erred by admitting prior bad acts of the defendant into evidence. The government presented trial testimony by the police that Ramsey had been in a vehicle with his co-conspirator, Steven Love, during car stops in May, 1989, and March, 1991, but it elicited no evidence of wrongdoing by Ramsey during either stop. The government argues that the evidence was admissible on issues of identity and opportunity to commit the offense to rebut Ramsey's asserted defense of mistaken identity. We agree and find that the evidence was relevant to show Ramsey's earlier associations with Love. Defendant's reliance on Fed. Rule 404(b) is misplaced because the government has not introduced evidence of a prior bad act at all. We also note that the trial court specifically instructed the jury that "evidence that the defendant previously committed an act not charged in this case" could be used to help decide identity and association but could not be used against him in reaching a decision on the crime charged.

Ramsey also argues that the evidence is irrelevant due to the length of time between the car stops and the date of the conspiracy. We find this argument unconvincing and observe that drawing distinctions between the relevance of evidence and the weight to be given it is a matter addressed to the sound discretion of the trial court.

## IV.

■ Ramsey asserts that the trial court erred in refusing to admit certain hearsay statements made by Steven Love. He complains that the trial court admitted statements by Love against him under Fed. Rule of Evid. 801(d)(2)(E), the so-called co-conspirator exception to the hearsay rule, but excluded one such statement that he wanted admitted. Ramsey asserts that he should have been allowed to introduce testimony by his girlfriend, Pamela Eubanks, to the effect that Love told her that Ramsey was not present during the first drug transaction. We reject Ramsey's argument because this

statement contained no matter that could even remotely be considered as furthering the conspiracy. *See* Rule 801(d)(2)(E).

 Ramsey argues alternatively that the statement should have been admitted pursuant to Fed. Rules of Evid. 804(b)(3) as a statement against interest. He maintains that any statement by Love regarding Ramsey's lack of involvement is inculpatory for Love and exculpatory for Ramsey. We do not follow the logic of this argument. Love's statement that he was present is certainly a statement against his interest, but his statement that Ramsey was not is not such a statement. We therefore reject this assignment of error.

### V.

Finally, Ramsey argues that the trial court erred in calculating his criminal history. He states that, in his presentence report (PSR), the probation officer increased his offense level one point pursuant to the U.S.S.G. § 4A1.1(c), Criminal History Category for prior sentences, and § 4A1.2(a)(3) and (4), Prior Sentence Definitions. The PSR revealed that Ramsey had previously pleaded guilty in an assault case and received a suspended sentence, and the government had subsequently agreed to dismiss that charge after he testified in an unrelated case. The probation officer assessed one criminal history point for this offense. Ramsey argues that the Sentencing Guidelines do not address this situation and asserts that his case is governed by Commentary Note 6 to the U.S.S.G. § 4A1.2, which states that sentences resulting from convictions that have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant should not be counted.

The district court, however, found that Ramsey's situation was covered by Commentary Note 10 to U.S.S.G. § 4A1.2, which states that a conviction that has been set aside for reasons unrelated to innocence or errors of law will be counted in determining a criminal history category. The district court, quite clearly we think, applied the proper Guideline.

### VI.

For the foregoing reasons, the trial court is affirmed in all respects.