**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 95-5215

TOMMY WRIGHT LANIER,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Chief District Judge.
(CR-94-25-F)

Argued: November 1, 1996

Decided: December 17, 1996

Before HALL and LUTTIG, Circuit Judges, and THORNBURG,
United States District Court Judge for the Western District of
North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Rodney Duane Davis, WEST VIRGINIA UNIVERSITY
COLLEGE OF LAW, Morgantown, West Virginia, for Appellant.
John Samuel Bowler, Assistant United States Attorney, Raleigh,
North Carolina, for Appellee. **ON BRIEF:** Gerald G. Ashdown,
WEST VIRGINIA UNIVERSITY COLLEGE OF LAW, Morgan-
town, West Virginia, for Appellant. Janice McKenzie Cole, United

States Attorney, J. Douglas McCullough, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The defendant, Tommy Wright Lanier, was charged in a bill of indictment along with five co-defendants of conspiring to possess with the intent to distribute marijuana in violation of 21 U.S.C. § 846. Following trial by jury, a verdict of guilty, and sentencing, the defendant appeals.

The facts as developed in the course of trial are as follows. The defendant met his co-defendant, Angel Hernandez, at a Wilmington, North Carolina, transmission shop around April 1994. He asked if Hernandez could obtain marijuana and by August was advised that marijuana could be supplied and made available to him in Wilmington. Several days before the marijuana actually arrived, the defendant was informed what the price would be and told that there would be approximately 200 pounds of marijuana. The amount seized at time and place of delivery, however, was approximately 600 pounds.

On the night of delivery, in the parking lot of defendant's shop, the marijuana was in the process of being unloaded when an airplane without lights began circling overhead. This alerted the defendant, who immediately told the persons involved to disperse and remove the van containing the marijuana. Much of defendant's conversation was captured through a receiver being worn by a government informant. As the parties attempted to leave, the defendant and the other co-defendants were arrested and charged as indicated.

Prior to trial, the government filed a motion to require the defendant to supply a voice exemplar. Defendant's attorney was served

2

with a copy of the motion. No response was filed by the defendant's attorney. Four days after the motion was filed, the district court ordered defendant to provide an exemplar of his voice. Two days thereafter he did so by reading a transcript provided him by the U.S. Attorney. That transcript was derived from the tape recording made during the sting operation. The reading thus made was used during the course of the trial as a voice exemplar. Also during the course of the trial, the defendant was questioned on cross examination about prior involvement with marijuana.

The defendant contends that the taking of the exemplar and its later use at trial, the application of sentencing guidelines, and the government's questioning about prior involvement with marijuana are errors for which this court should grant relief. For the reasons set forth, we disagree and affirm.

I.

The defendant's first and main contention is that use of the voice exemplar violated his Fifth and Sixth Amendment rights. Questions concerning a violation of constitutional rights are reviewed de novo. In this case, however, the court does not find the use of the voice exemplar to be a violation of constitutional rights and thus determines the appropriate standard of review to be abuse of discretion. United States v. Wade, 388 U.S. 218 (1967); United States v. Dionisio, 410 U.S. 1 (1973).

It is well-settled that the sound of a defendant's voice is not itself "testimonial" and thus not covered by the Fifth Amendment's protection against compelled self-incriminating testimony. See Dionisio, 410 U.S. at 8; Doe v. United States, 487 U.S. 201, 210 (1988); see also United States v. Oriakhi, 57 F.3d 1290, 1299 (4th Cir.), cert. denied, 116 S. Ct. 400 (1995). Lanier argues that his case is different because in making the exemplar, he was made to "fill in the gaps" in the original recording, thus allowing the police to elicit substantive incriminating testimony. Yet the appellant cites no portion of the record supporting that bald assertion and indeed elsewhere complains that the exemplar, rather than containing additions to the original recording, consisted of "the repetition of the content of the informant's recording." Appellant's Br. at 11 (emphasis provided). Such

3

repetition of potentially incriminating words is not the kind of compelled communication or disclosure of incriminating evidence prohibited by the Self-Incrimination Clause of the Fifth Amendment. See United States v. Wade, 388 U.S. 218, 222-23 (1967) (compelling defendant to speak, within hearing distance of witnesses, words purportedly uttered by criminal was for identification and did not compel testimony); Burnett v. Collins, 982 F.2d 922, 927, n.5 (5th Cir. 1993) (compelling utterance of robber's words before jury for identification purposes did not elicit testimony); United States v. Domina, 784 F.2d 1361, 1371 (9th Cir. 1986) (compelling utterance of robber's words before jury for identification purposes does not violate self-incrimination principles); see also Doe, 487 U.S. at 210 ("to be testimonial, accused's communication must itself, explicitly or implicitly, relate factual assertion or disclose information").

Lanier next claims that taking of the exemplar without the presence of his lawyer violated his Sixth Amendment right to have counsel present at all "critical stages" of a criminal proceeding, as required by United States v. Wade, supra. Wade held that the Sixth Amendment entitles criminal defendants to the assistance of counsel at post-indictment lineups. It also stands for the more general proposition that a defendant is entitled to counsel in all "critical" confrontations prior to trial where "potential substantial prejudice to [a] defendant's rights inheres in the particular confrontation," and counsel could help "avoid that prejudice." 388 U.S. at 227. The Supreme Court discussed this "critical" stage right in the companion case to Wade, Gilbert v. California, 388 U.S. 263 (1967). In Gilbert , the Court held that taking a defendant's handwriting exemplar was not a critical stage requiring the presence of an attorney because the potential prejudicial effect of such samples could be remedied through the adversarial process at trial, e.g., by defense production of competing exemplars. Id., 388 U.S. at 267.

Following the Supreme Court's reasoning in Gilbert, this Circuit has held that the taking of a voice exemplar, like the taking of handwriting exemplars and unlike the post-indictment lineup in Wade, is not a critical stage during which the Sixth Amendment requires the presence of an attorney. Oriakhi, 57 F.3d at 1299.

Lanier contends that this Circuit's Oriakhi decision is not controlling because his exemplar was introduced as substantive evidence. He

4

reasons that the exemplar's use "relates back" to the taking of the exemplar and makes it a critical stage requiring the presence of counsel. We reject this contention for at least two reasons. First, the defendant's voice exemplar was not introduced or admitted as substantive evidence. Indeed, the district judge's repeated, comprehensive admonitions that the jury should consider the exemplar tape and transcript solely for identification purposes makes it clear that they were not. By contrast, the substantive content of the original tape was established by its being played and compared with a written transcript of that recording. The defense had ample opportunity to attack the original recording's intelligibility and accuracy, a fact demonstrated by the defendant's having taken the stand and interpreted (rather than denied) the statements attributed to him. J.A. at 224-36, 246. Second, the Sixth Amendment does not and should not relate back to require the presence of counsel at the taking of Lanier's exemplar. Such an approach would classify the taking of a voice exemplar as a conditional critical stage depending on the exemplar's subsequent use at trial. That standard, in addition to being unworkable, stands at odds with this court's previous holding that the taking of voice exemplars is simply not a critical stage for Sixth Amendment purposes. Oriakhi, 57 F.3d at 1299. Lanier was not entitled to have an attorney present at the taking of his voice exemplar.

Defendant next contends that reversible error was committed when the government failed to disclose a transcript of the voice exemplar prior to trial. Apparently, the defendant attempted to have this very material suppressed in a motion in limine. J.A. at 55-56. "Decisions regarding the admission or exclusion of evidence are committed to the sound discretion of the district court and will not be reversed absent an abuse of discretion." United States v. Lancaster, 96 F.3d 734, 744 (4th Cir. 1996) (en banc). We find no evidence of such an abuse of discretion here, especially in light of the fact that the defense had access to the transcripts from which the exemplar (and thus the exemplar transcript) was made. The availability of the original transcript makes it plain that suppressing the exemplar transcript would not have altered the outcome of this trial. See United States v. Bagley, 105 S. Ct. 3375, 3383 (1985); cf., United States v. Glover, 846 F.2d 339, 342 (6th Cir. 1988) (finding no reversible error in failure to present handwriting exemplar where original writing had been provided and defendant could produce his own exemplars).

5

II.

Defendant next contends that the district court incorrectly determined his criminal history category. The deference due the sentencing judge's application of the sentencing guidelines to the facts at issue varies with each case. It is clear, however, that where the issue depends primarily on a factual determination, the court will apply the clearly erroneous standard. If the issue turns primarily on a legal interpretation, the review moves closer to de novo. United States v. Castner, 50 F.3d 1267, 1274 (4th Cir. 1995); United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989).

Defendant first maintains that his criminal history was incorrectly elevated for a state conviction that was dismissed on appeal after sentencing. (The state case was pending appeal at the time of his sentencing hearing.) Defendant was found to have a criminal history of VI based on the total number of points assigned for his prior convictions. The sentencing guidelines provide that "[p]rior sentences under appeal are counted [in calculating criminal history]." U.S.S.G. § 4A1.2(l). Application Note 6 to that guideline provides that a sentence resulting from a conviction that has been reversed or vacated because of an error of law, subsequently discovered evidence, or a constitutional invalidity is not to be counted. U.S.S.C., Guidelines Manual, § 4A1.2, Application Note 6 (1995).

Defendant does not claim that the prior sentence was vacated or reversed on appeal due to an error of law or constitutional invalidity. He merely states that while the appeal was pending, the state prosecutor dismissed the charges. Nothing more is presented in the record.

Where a state conviction considered for federal sentencing is subsequently dismissed for reasons other than innocence or errors of law, it is properly counted in the criminal history. See United States v. Ramsey, 999 F.2d 348, 351 (8th Cir. 1993).

> A conviction is considered final for criminal history purposes at the time of the trial court's determination of guilt. Under U.S.S.G. § 4A1.2(a)(1), a "prior sentence" is defined as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo con-

tendere." This language contains no requirement that a sentence be upheld on appeal prior to inclusion in the criminal history calculation.

United States v. Beddow, 957 F.2d 1330, 1337 (6th Cir. 1992) (citing United States v. Mackbee, 894 F.2d 1057 (9th Cir.), cert. denied, 495 U.S. 962 (1990)) (emphasis in original).

Next, defendant claims the trial court improperly found he could reasonably foresee 600 pounds of marijuana involved in the conspiracy. However, defendant made no objection to this quantity at his sentencing hearing.

> A defendant's failure to object to a sentencing issue amounts to a waiver of his right to raise that issue on appeal, absent plain error. Under this standard, we must find that (1) an error was committed, (2) the error was plain, and (3) the error affected the defendant's substantial rights. Once these threshold requirements are satisfied, we must also decide whether the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings."

United States v. Ford, 88 F.3d 1350, 1355-56 (4th Cir. 1996) (citations omitted).

Evidence admitted during the course of the trial indicated the marijuana seized at the time of defendant's arrest amounted to 598 pounds and 29 ounces. J.A. at 141. The presentence report also stated the amount of marijuana to be approximately 600 pounds. J.A. at 282, 287. No objection was made at the time of sentencing in regard to the amount of drugs with which he was being charged. J.A. at 244-50.

> The defendant has an affirmative duty to make a showing that the information in the presentence report is unreliable and articulate the reasons why the facts contained therein are untrue or incorrect . . . [W]ithout an affirmative showing that the information is inaccurate the court is free to adopt the findings of the [presentence report] without more specific inquiry or explanation. . . . The burden is on the defen-

7

> dant to show the inaccuracies or unreliability of the
> presentence report.

United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990) (citations omitted). Under the facts of this case where the defendant was accepting delivery of approximately 600 pounds of marijuana at his local place of business and was arrested in the midst of the off-loading operation, we do not find any error in the trial judge's conclusion that 600 pounds of marijuana should be attributed to the defendant. This determination finds full support by a preponderance of the evidence.

It would also appear to be appropriate to include the drug amounts handled by his co-conspirators (if it be doubted that the defendant on his own should be charged with the entire amount) since all were acting "in furtherance of the jointly undertaken activity" with the defendant, and in a way that was "foreseeable [by the defendant] in connection with the criminal activity." United States v. Banks, 10 F.3d 1044, 1057 (4th Cir. 1993), cert. denied sub nom. Blow v. United States, 114 S. Ct. 1850 (1994), and cert. denied sub nom. Copeland v. United States, 114 S. Ct. 2681 (1994); see U.S.S.C., Guidelines Manual, §§ 1B1.3(a)(1)(B), Application Note 2 (1995).

III.

The last assignment of error stems from questions posed during the defendant's cross-examination. On direct examination, the defendant testified that he became upset when he saw Hispanics at his property and heard the surveillance plane because he had been in prison for 12 years as the result of a robbery conviction. J.A. at 208-09. Since his release from prison, the defendant stated he had a "legitimate occupation" and was not involved with the drug dealers who showed up at his business on the night of the arrest because, "I can't stand the trouble; I had enough." Id., at 209. On cross examination, the prosecutor posed the following question: "I take it from your statement, that you have been living a blameless life since you have been released from prison, and you don't want any part in trouble?" Id., at 220. Defendant answered, "I try to avoid it if I can, yes, sir." Id. The prosecutor then asked, without objection, if the defendant had engaged in any criminal activity since his release from prison, to which the defendant answered, "[a]bsolutely not." Id. Next the government asked, again

8

without objection, if the defendant had not "dabbled" in the drug business; defendant answered no. Id. Finally, when the government asked about a 1993 marijuana charge, defense counsel objected. Id., at 221.

The district court ruled that the prosecution could not ask about criminal "charges" (and instructed the jury to that effect), but it did permit questions that would show defendant led anything but a "blameless life" because the defense had "opened the door" to this line of questioning on direct. Id. The only questions asked and answered along those lines were three. As just mentioned, the government asked if the defendant "dabbled" in the drug business and the defendant replied that he had not. The prosecutor then asked whether defendant had been "found" in possession of marijuana in 1993. Defendant replied that while "marijuana was taken off some property . . . I have not been convicted of anything." J.A. at 221. Later, the prosecutor asked whether the defendant ever possessed marijuana for resale, to which Lanier replied, "I possessed nothing; no possession for resale." Id. at 227. Given that the defendant opened the door on direct concerning his avoidance of trouble, allowing these questions to be asked and answered for impeachment purposes constituted no error, harmless, plain or otherwise, and was fully within the trial judge's discretion.

CONCLUSION

For the reasons stated herein, the judgment of the district court is hereby

AFFIRMED.

9