United States Court of Appeals

FOR THE EIGHTH CIRCUIT

No. 96-1370/1371EMSL

United States of America,          *
                                   *
       Appellee,                   *
                                   *   Appeals from the United States
          vs.                      *   District Court for the
                                   *   Eastern District of Missouri
Steven Triplett,                   *
                                   *
       Appellant.                  *

No. 96-1621EMSL

United States of America,          *
                                   *
       Appellee,                   *
                                   *
          vs.                      *
                                   *
Joseph Lee Triplett,               *
                                   *
       Appellant.                  *


       Appellant's motion for technical correction and petition for
rehearing have been considered by the Court and are granted.  The
opinion and judgment of this court entered on December 24, 1996,
are vacated.

       The attached opinion is substituted for the opinion filed
December 24, 1996.


                                   January 17, 1997


Order Entered at the Direction of the Court:

Clerk, U.S. Court of Appeals, Eighth Circuit.

_____

Nos. 96-1370/1371
_____

United States of America,    *
                             *
        Appellee,            *
                             *   Appeals from the United States
    v.                       *   District Court for the
                             *   Eastern District of Missouri.
Steven Triplett,             *
                             *
        Appellant.           *

                           _____

                      No. 96-1621
                           _____

United States of America,    *
                             *
        Appellee,            *
                             *
    v.                       *
                             *
Joseph Lee Triplett,         *
                             *
        Appellant.           *

                           _____

            Submitted:  September 11, 1996

                Filed:  January 17, 1997
                           _____

Before BOWMAN, BRIGHT, and JOHN R. GIBSON, Circuit Judges.

                           _____

BOWMAN, Circuit Judge.


     On May 18, 1995, two armed, masked men robbed a United States
Post Office in St. Louis.  At approximately 4:00 p.m., the men,
brandishing weapons, accosted a postal employee on a loading dock
and forced their way into the back room of the postal facility.
Once inside, the gunmen threatened two other postal employees and

compelled them to turn over a large amount of currency, checks, and postal money orders.  These money orders were imprinted with serial

numbers that were recorded by postal officials and could be traced in the event of a theft. During the course of the robbery, a shot was fired by one of the gunmen. The bullet lodged in the wall and later was recovered by police. Once the gunmen were satisfied that there was no additional money on the premises, they forced all three postal employees into an adjoining bathroom, bound two in duct tape, and buried all three under a pile of mail bags, boxes, and transportation carts. The gunmen then secured the bathroom door with another pile of boxes and carts, removed the videotape from the surveillance camera, and fled the post office.

Investigation of the robbery led to the arrest and indictment of Steven Triplett and Joseph L. Triplett. Both were charged with armed robbery of a United States Post Office in violation of 18 U.S.C. § 2114(a) (1994) and use of a firearm during the robbery in violation of 18 U.S.C. § 924(c)(1) (1994). In addition, Steven Triplett was charged as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (1994).

A jury found both Steven and Joseph Triplett guilty on the armed robbery and § 924(c) charges. Steven waived trial by jury on the § 922(g) charge and that part of the case was submitted to the District Court based on the testimony elicited during his trial on the other charges. The District Court found Steven guilty on the § 922(g) charge, and the court entered judgment against both men in accordance with the jury's and the court's findings on the various charges. The court sentenced Steven Triplett to 180 months of imprisonment and Joseph Triplett to 360 months of imprisonment. Both men appeal their armed robbery and § 924(c) convictions. Steven does not appeal the § 922(g) conviction, but challenges the District Court's sentence, the computation of which took this conviction into account. Joseph does not appeal his sentence.

Steven Triplett first challenges the District Court's admission into evidence testimony by Walter Ivery regarding Ivery's

attempt to cash a number of the stolen postal money orders four days after the post-office robbery. Steven contends that this testimony was improperly admitted evidence of "other crimes" under Federal Rule of Evidence 404(b)[1] meant only to sully his character or prove his propensity to commit the charged crimes.

Our review of the evidentiary rulings of a district court is for abuse of discretion, see United States v. Ballew, 40 F.3d 936, 941 (8th Cir. 1994), cert. denied, 115 S. Ct. 1813 (1995); United States v. Whitfield, 31 F.3d 747, 749 (8th Cir. 1994), and we "will reverse only when an improper evidentiary ruling affects the substantial rights of the defendant or when we believe that the error has had more than a slight influence on the verdict." Ballew, 40 F.3d at 941.

Walter Ivery testified that Steven Triplett telephoned him on May 22, 1995, four days after the robbery, and requested his assistance in "moving" some money orders that Steven purportedly acquired from a man who took them from a woman's purse. Ivery further testified that he met with Steven on May 22, 1995, that Steven handed him an envelope containing the stolen money orders, and that Steven was present when Ivery eventually attempted to cash the stolen money orders at another post office.

Underlying Steven Triplett's objection to the admission of Ivery's testimony is his mischaracterization of these statements as

---

[1]Federal Rule of Evidence 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

evidence of "other crimes, wrongs, or acts" under Rule 404(b). This evidence is more accurately characterized as direct evidence

of the crime charged.  See Ballew, 40 F.3d at 941; United States v. Jones, 880 F.2d 55, 59 (8th Cir. 1989).  Contrary to Steven's assertions, this evidence was not admitted merely to tarnish his reputation or to demonstrate his propensity to commit the charged crimes; it was admitted as direct evidence that he was in possession of the postal money orders that were stolen from the post office only days before.  A reasonable inference from such possession was that Steven participated in the robbery of the post office.

The possession of property recently stolen "is ordinarily a circumstance from which a jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession not only knew it was stolen property, but also participated in some way in the theft of the property."  United States v. Nabors, 762 F.2d 642, 653 (8th Cir. 1985) (citation to quoted case omitted); cf. United States v. Clark, 45 F.3d 1247, 1250 (8th Cir. 1995) ("possession of recently stolen property is evidence of participation in a theft"). We find no abuse of discretion by the District Court in overruling Steven's objections to the admission of this evidence.

Steven Triplett advances similar arguments to demonstrate the impropriety of admitting into evidence still photographs prepared of him from a post-office surveillance videotape that was made during Walter Ivery's failed attempt to cash the stolen money orders.  Like Ivery's testimony, these photographs were admitted as relevant evidence of the crimes charged and not as evidence of uncharged crimes nor as evidence intended to disparage Steven's reputation or merely to illustrate his propensity to commit the charged crimes.  Steven's involvement in the scheme to cash the stolen money orders is relevant and admissible evidence concerning his involvement in the robbery that was executed to procure those money orders.  See Clark, 45 F.3d at 1250 (upholding jury

-7-

instruction that permitted an inference of involvement in robbery from possession of recently stolen property).

In the alternative, Steven Triplett argues that these photographs are cumulative since defense counsel stipulated at trial to Steven's presence in the post office during Ivery's attempt to cash the stolen money orders. Even if, as Steven argues, this evidence was cumulative given Walter Ivery's in-court testimony and defense counsel's stipulation regarding the events of May 22, 1995, the prejudicial effect of its admission is negligible. "Improper admission of evidence which is cumulative of matters shown by admissible evidence is harmless error." Smith v. Firestone Tire & Rubber Co., 755 F.2d 129, 132 (8th Cir. 1985). Because Ivery's testimony regarding Steven's presence at the post office was admissible, the still photographs confirming Steven's presence, even if cumulative, are likewise admissible. The District Court did not abuse its discretion in admitting this evidence.

Steven Triplett next asserts that the District Court erred in refusing to allow cross-examination of Walter Ivery concerning the discovery by police of an alleged controlled substance during a search of Ivery's home after his arrest for attempting to cash the stolen money orders. This refusal, according to Steven, denied him the opportunity to demonstrate Ivery's motive for testifying falsely, namely, Steven's theory that prosecutors promised Ivery clemency on future drug possession charges in exchange for his testimony against Steven.

"The Confrontation Clause of the Sixth Amendment guarantees to a defendant the opportunity for effective cross-examination of witnesses against him, including inquiry into the witnesses' motivation and bias." United States v. Willis, 997 F.2d 407, 415

-8-

(8th Cir. 1993), <u>cert. denied</u>, 510 U.S. 1050 (1994).  This guarantee, however, is not without limitation.  "[We] have long

recognized that the trial judge must retain discretion to limit the scope of cross-examination." United States v. Wood, 834 F.2d 1382, 1384 (8th Cir. 1987) (citations omitted); accord United States v. Juvenile NB, 59 F.3d 771, 778 (8th Cir. 1995). Reversal of a district court's decision to limit cross-examination is warranted, therefore, "only where there has been clear abuse of discretion, and a showing of prejudice to the defendant." Wood, 834 F.2d at 1384.

The District Court allowed defense counsel to question Ivery about the results of this search outside the presence of the jury, and concluded that the inquiry was an improper attempt to impeach Ivery for bias. The confiscated material was never tested or positively identified as a controlled substance and Ivery was never charged with possession of a controlled substance. Ivery testified that he entered into no agreement with the government conditioning his testimony in this trial on favorable treatment on any future charges made in connection with the alleged drug possession. The officers who came in contact with Ivery likewise testified that they made no promises of leniency in return for Ivery's cooperation with their investigation of the post-office robbery. Defense counsel was provided ample opportunity to cross-examine Ivery in the presence of the jury regarding his numerous prior convictions, and we find no abuse of discretion in the District Court's refusal to allow inquiry into an incident as to which Ivery was never charged and as to which he testified that he was not promised favorable treatment by the government.

Both Steven Triplett and Joseph Triplett claim that they were subjected to unduly suggestive line-up procedures and that the resulting identifications were improperly admitted into evidence. "To sustain a challenge to an out-of-court line-up, the defendant must first show that the procedure employed was impermissibly

suggestive.  If it was, the court must then determine whether, under the totality of the circumstances, the suggestive procedures

created a very substantial likelihood of irreparable misidentification." United States v. Ramsey, 999 F.2d 348, 349 (8th Cir. 1993); see also Manson v. Brathwaite, 432 U.S. 98 (1977).

Steven Triplett challenges the District Court's admission of testimony by a witness, Robert Trogler, who selected Steven from a police line-up on May 25, 1995--one week after the robbery. Trogler identified Steven as one of two men he observed loitering in an alley behind the post office, in close proximity to the door used by the robbers, shortly before the robbery occurred. When Trogler was transported to the police station to view the line-up, he was told that the individuals included in the line-up may have been involved in the robbery and that he should alert the detectives if he recognized either person he had seen in the alley. The detectives did not suggest that any particular individual in the line-up was implicated in the robbery, or that Trogler should identify any specific person. The line-up itself consisted of five African-American males, all of the same general description given by Trogler to police immediately after the robbery, and all of substantially the same age, height, weight, complexion, and features as Steven Triplett.[2] After viewing the line-up, and without any improper suggestion from detectives, Trogler pointed out Steven as one of the individuals he observed standing outside the post office on the day of the robbery. We find nothing in this procedure that is unduly suggestive. Because Steven has failed to make a threshold demonstration that the line-up procedure was impermissibly suggestive, we need go no further in our inquiry.

---

[2]Steven Triplett argues that his "brightly colored, loud, but surprisingly tasteful, Hawaiian-type print shirt" drew unwarranted attention to him "in the midst of a sea of solid white tops and dark green bottoms." Brief for Appellant at 22. We find this argument unpersuasive. Though Steven's shirt may have been eye-catching, wearing it in the line-up was his choice; the police did not select his attire for him.

See Ramsey, 999 F.2d at 349.  The District Court did not abuse its discretion in admitting this evidence.

Robert Trogler also identified Joseph Triplett as one of the men he saw behind the post office after examining a series of photographs presented to him by police officers approximately one month after the robbery. The photographic spread contained a photograph of Joseph Triplett and individual photographs of five other persons. All the persons depicted were African-American males of approximately the same age, complexion, weight, and physical characteristics. The photographs were handed to Trogler in a stack, and he was instructed to examine each photograph and to advise the detectives if he recognized either of the individuals he had seen in the alley. The detectives did not indicate to Trogler that any of the individuals depicted was involved in the robbery or that any particular photograph should be selected. The stack of photographs was in random order and nothing in its arrangement or composition leads us to believe that it somehow suggested that Trogler should select Joseph's photograph. We conclude that the identification procedure was not unduly suggestive, and that the District Court did not abuse its discretion in admitting Trogler's testimony regarding his identification of Joseph Triplett.

We turn now to Steven Triplett's and Joseph Triplett's allegations that the evidence elicited at trial was insufficient to support the jury's finding that they committed the post-office robbery. "This court will reverse a conviction for insufficient evidence only when we conclude that no reasonable trier of fact could find guilt beyond a reasonable doubt." Ballew, 40 F.3d at 942; accord United States v. Bascope-Zurita, 68 F.3d 1057, 1060 (8th Cir. 1995), cert. denied, 116 S. Ct. 741 (1996); United States v. Behr, 33 F.3d 1033, 1035 (8th Cir. 1994). "[W]e view the evidence in the light most favorable to the guilty verdict, granting the government every reasonable inference therefrom." United States v. McCarthy, 97 F.3d 1562, 1568 (8th Cir. 1996); accord United States v. Swinton, 75 F.3d 374, 380 (8th Cir. 1996).

Moreover, "it is not our function to pass upon the credibility of witnesses or to attempt to weigh the evidence and substitute our

judgment for that of the jury."  Ballew, 40 F.3d at 942 (quoting United States v. Prionas, 438 F.2d 1049, 1052 (8th Cir.), cert. denied, 402 U.S. 977 (1971)).  Having viewed the record under the foregoing standards of review, we conclude that sufficient evidence was presented for a reasonable jury to conclude beyond a reasonable doubt that Steven Triplett and Joseph Triplett committed the post-office robbery in question.

Robert Trogler testified that he observed Steven and Joseph Triplett outside the post office moments before the robbery occurred.  Trogler was able to identify Steven after viewing a police line-up and Joseph after inspecting a series of photographs. Vernon Jordan testified that he accompanied Steven and Joseph Triplett on a "dry run" of the robbery only days before the actual crime.  Jordan visited Steven's apartment late in the afternoon on the day the robbery occurred, observed cash, guns, masks and gloves strewn on the bed, and listened while Steven and Joseph recounted minute details of the robbery.  Jordan also testified that he saw Joseph Triplett dispose of a plastic bag containing what he believed to be the surveillance videotape removed from the post office during the robbery.  Walter Ivery testified that Steven Triplett requested his assistance in cashing money orders that were ultimately identified as those stolen from the post office during the May 18, 1995, robbery.  Steven Triplett, during questioning by detectives, admitted that he was in possession of the stolen money orders only four days after the robbery.  A search of Steven's apartment after his arrest uncovered the weapon that ballistics tests established was discharged during the robbery, and further tests revealed that the fingerprint left on this gun was Steven's. Despite the fact that none of the three postal employees present during the robbery could identify their masked assailants, we believe this is ample evidence for a reasonable trier of fact to find guilt beyond a reasonable doubt.

Steven Triplett next contends that the District Court improperly calculated his sentence under the United States Sentencing Guidelines Manual. "The applicability of a section of the Sentencing Guidelines to a particular case is a question of law which we review de novo." United States v. McFarlane, 64 F.3d 1235, 1237 (8th Cir. 1995).

Because Steven's sentence under the Guidelines for violations of both §§ 2114(a) and 924(c) might have been less severe than had he been convicted of violating only § 2114(a) with an enhancement for using a firearm, the District Court was required to calculate Steven's prison term by comparing the results achieved from two methods of computation. See U.S. Sentencing Guidelines Manual § 2K2.4, commentary (n.2) (1995). The District Court was required to (1) determine the base offense level and sentencing range under § 2B3.1 for the robbery, excluding only those specific offense characteristics listed under subsections (b)(2)(A)-(F) related to the possession, use, or discharge of a firearm, and then add to the maximum sentence under that computation the sixty-month mandatory sentence under § 2K2.4(a) and 18 U.S.C. § 924(c) for the use of a firearm; and (2) determine the base offense level under § 2B3.1, taking into account all specific offense characteristics, including any applicable characteristic under subsections (b)(2)(A)-(F) related to the possession, use, or discharge of a firearm, but then disregard the sixty-month mandatory sentence under § 2K2.4(a) and 18 U.S.C. § 924(c). After comparing the sentence range calculated under these two approaches, the District Court was permitted to depart upward if the calculation under the first method would "result in a decrease in the total punishment." U.S. Sentencing Guidelines Manual § 2K2.4, commentary (n.2) (1995). In any case, the upward departure could not "exceed the maximum of the guideline range that would have resulted had there not been a count of conviction under . . . § 924(c)," id., that is, the maximum of the range under the second calculation.

-17-

Pursuant to the first method described by the Guidelines, the District Court computed Steven's base offense level under § 2B3.1 for the robbery, including a two-level enhancement under § 2B3.1(b)(2)(F) for an express threat of death, while also adding the sixty-month mandatory sentence imposed under 18 U.S.C. § 924(c) and § 2K2.4 for the use of a firearm in relation to a robbery. Steven argues that this enhancement amounts to double-counting in violation of the Guidelines provisions. If, as Steven contends, the District Court added the two-level enhancement under subsection (F) based on the "possession, use, or discharge of a firearm," this increase was erroneous because it, indeed, amounts to double-counting. "Where a sentence under this section [U.S. Sentencing Guidelines Manual § 2K2.4] is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of an explosive or firearm (e.g., § 2B3.1(b)(2)(A)-(F) (Robbery)) is not to be applied in respect to the guideline for the underlying offense." U.S. Sentencing Guidelines Manual § 2K2.4, commentary (n.2). Commentary to the Guidelines is binding on the courts when it interprets or explains a guideline, "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." United States v. Jackson, 67 F.3d 1359, 1370 (8th Cir. 1995) (quoting Stinson v. United States, 508 U.S. 36, 38 (1993)), cert. denied, 116 S. Ct. 1684 (1996). If, however, the District Court added the two-level enhancement under § 2B3.1(b)(2)(F) for an express threat of death unrelated to the "possession, use, or discharge of a firearm," the enhancement was proper in conjunction with § 924(c) as explained in Application Note 2 to § 2K2.4 of the Sentencing Guidelines. On remand, the District Court, if it elects to enhance Steven's sentence based on subsection (F), should clarify that the conduct on which it bases this enhancement is not firearm-related.

Pursuant to the second method described by the Guidelines, the District Court calculated Steven's base offense level for robbery

under § 2B3.1, including enhancement under the specific offense characteristics of subsections (b)(2)(A) and (F), and disregarded the sixty-month sentence required by § 2K2.4. The District Court increased Steven's base offense level by two levels under § 2B3.1(b)(2)(F) for an express threat of death and further increased Steven's base offense level by seven levels under § 2B3.1(b)(2)(A) for the discharge of a firearm. Steven challenges the Court's use of both sections to enhance his sentence.

Section 2B3.1(b)(2) provides:

(A) If a firearm was discharged, increase by **7** levels; (B) if a firearm was otherwise used, increase by **6** levels; (C) if a firearm was brandished, displayed, or possessed, increase by **5** levels; (D) if a dangerous weapon was otherwise used, increase by **4** levels; (E) if a dangerous weapon was brandished, displayed, or possessed, increase by **3** levels; or (F) if an express threat of death was made, increase by **2** levels.

U.S. Sentencing Guidelines Manual § 2B3.1(b)(2) (1995). The government concedes that the disjunctive "or" before the last clause of this section precludes an enhancement for both the discharge of a firearm under subsection (A) and for the express threat of death under subsection (F). We conclude that the construction of this Guidelines provision suggests that the particular subsections are to be applied alternatively and not collectively. Use of the disjunctive indicates that only one of the enumerated offense characteristics under subsection § 2B3.1(b)(2) is to be applied, rather than a combination of more than one such offense characteristics. This subsection is also structured such that conduct under subsection (A), discharging a firearm, would likely encompass the conduct involved under, for example, subsection (C), brandishing, displaying, or possessing a firearm. If the firearm was discharged, it was necessarily

-21-

possessed. Under these circumstances, it is unlikely that the drafters of the Guidelines intended that the base offense level be

increased by seven levels for discharging a firearm and by another five levels for brandishing, displaying, or possessing a firearm. See United States v. "LNU" Omar, 16 F.3d 1168, 1171 (11th Cir. 1994) (holding § 2B3.1 "offers a set of alternative increases"); United States v. Farrier, 948 F.2d 1125, 1127 (9th Cir. 1991) ("Only one of the increases in offense levels may be applied to the same offense . . . ."). In making the calculation required under the Guidelines' second method, the District Court, on remand, may enhance Steven's base offense level under either subsection (A) or subsection (F), but not under both.

Steven argues that the District Court inadvertently neglected to grant him a downward departure for acceptance of responsibility in light of his guilty plea to the § 922(g) charge. During the change of plea hearing before the District Court, Steven agreed to waive a jury trial on this charge and stipulated that the government could establish beyond a reasonable doubt that he violated § 922(g). The government suggested at that time, and the District Court appears to have agreed, that Steven was entitled to the two-level departure for acceptance of responsibility, but the sentence imposed does not reflect that the downward adjustment was made. We have no way of knowing whether the omission was deliberate or inadvertent. On remand for resentencing, the District Court should explicitly exercise its discretion as to whether a downward departure for acceptance of responsibility is warranted under the standards of U.S. Sentencing Guidelines Manual § 3E1.1 (1995).

Steven Triplett contends that the evidence is insufficient to support an enhancement under subsection (A) for the discharge of a firearm since it is unclear whether he or Joseph Triplett actually fired the weapon. We find this argument to be without merit. The seven-level enhancement under § 2B3.1(b)(2)(A) is applicable "[i]f

a firearm was discharged" during the robbery.  The Guidelines do not require that the defendant, as opposed to an accomplice or

co-conspirator, have fired the weapon.  Rather, there merely must be evidence, as there is in this case, that a weapon was discharged during the robbery.

Moreover, the evidence presented was sufficient to permit the District Court to find that Steven discharged the weapon.  The evidence elicited at trial establishes that one of the gunmen discharged a firearm during the post-office robbery, the police retrieved the bullet from the post-office wall, the police conducted ballistics tests confirming that the bullet removed from the post-office wall was fired from the gun found in Steven's apartment, and Steven's fingerprint was found on the gun.

Finally, Steven Triplett asserts that he was denied his Sixth Amendment right to effective assistance of counsel when his defense counsel failed to object to the District Court's miscalculation of his sentence under the United States Sentencing Guidelines Manual and failed to present an alibi defense.  Because we have already addressed the sentencing error by remanding Steven's case to the District Court for correction, Steven has failed to establish the prejudice necessary to prevail on an ineffective assistance of counsel claim.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  Steven will receive the relief to which he is entitled at resentencing, and we need not reconsider this error under a claim of ineffective assistance of counsel.

The challenge to counsel's failure to raise an alibi defense is not ripe for review.  Generally, an appellant's claims of ineffective assistance "are not cognizable on direct appeal." United States v. Jennings, 12 F.3d 836, 840 (8th Cir. 1994) (quoting United States v. Sanchez, 927 F.2d 376, 378 (8th Cir. 1991)).  Rather, "such claims properly are raised in a proceeding under 28 U.S.C. § 2255 or in a habeas corpus proceeding."  Id.; see

<u>Jennings</u>, 12 F.3d at 840.  An exception to this rule arises only on the rare occasion when the district court has developed a record on

the ineffectiveness issue.  See United States v. Williams, 897 F.2d 1430, 1434 (8th Cir. 1990).  Because no record was made in the District Court concerning counsel's failure to raise an alibi defense, we are unable to review the merits of this ineffective assistance claim, and we decline to address it further.

For the reasons stated above, we (1) affirm the convictions of both appellants,  and (2) vacate Steven Triplett's sentence and remand to the District Court for resentencing.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.