**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Isong Udo ISONG, Defendant–Appellant.**

**No. 96–6050.**

United States Court of Appeals,
Sixth Circuit.

Argued March 19, 1997.

Decided April 14, 1997.

---

Hilliard H. Hester, Asst. U.S. Attorney (argued and briefed), Nashville, TN, for Plaintiff–Appellee.

Sumter L. Camp, Asst. Federal Public Defender (argued and briefed), Nashville, TN, for Defendant–Appellant.

Before: LIVELY, NELSON, and MOORE, Circuit Judges.

NELSON, J., delivered the opinion of the court, in which LIVELY, J., joined. MOORE, J. (pp. 431–33), delivered a separate dissenting opinion.

DAVID A. NELSON, Circuit Judge.

This appeal presents two questions concerning an alien defendant's sentence: (1) whether, in imposing supervised release, the district court undertook to provide that the period of supervised release would be tolled when the defendant was deported; and (2) if so, whether the district court had authority to provide for such tolling. We agree with the district court that the answer to both questions is "yes."

**I**

In December of 1992, following entry of a plea of guilty to charges of immigration fraud, the United States District Court for the Middle District of Tennessee sentenced defendant Isong Udo Isong to a three-month term of imprisonment, with two years of supervised release to follow. In addition to the standard conditions of supervised release, the court imposed three special conditions: (1) Mr. Isong was to agree to voluntary deportation; (2) "[s]hould defendant be deported from the United States he shall not re-enter the United States illegally and shall obtain express permission and approval, in writing, of the Attorney General of the United States as a condition of re-entry"; and (3) "[i]n the event defendant is permitted, at any time in the future, to re-enter the United States, defendant shall report to the nearest United States Probation Office within 48 hours of re-entry into this country, at which time, [the] period of supervised release shall be resumed."

After serving his three-month prison sentence, Mr. Isong was released into the custody of the Immigration and Naturalization Service for deportation. He was deported to his native Nigeria in March of 1993.

Within seven months of his deportation, Mr. Isong reentered the United States illegally. Not surprisingly, perhaps, he failed to report to the nearest Probation Office. Immigration officials learned of his illegal re-

turn early in 1996, and he was arrested in California in April of that year.

Alerted to the arrest, a probation officer in the Middle District of Tennessee filed a petition seeking revocation of Mr. Isong's supervised release. Mr. Isong moved to dismiss the petition, arguing that the district court's judgment did not provide for tolling of the period of supervised release. He contended that his supervised release had expired in March of 1995, the period of supervised release having run without interruption from the date of his release from prison. Mr. Isong also argued that even if the district court had intended to provide for tolling of the period of supervised release, the court had no authority to do so. The district court denied the motion, revoked the supervised release, and sentenced Mr. Isong to imprisonment for twenty-four months. This timely appeal followed.

## II

■ The threshold issue presented for our decision is what was meant by the third special condition. That condition, to repeat, read as follows:

> "In the event defendant is permitted, at any time in the future, to re-enter the United States, defendant shall report to the nearest United States Probation Office within 48 hours of re-entry into this country, at which time, [the] period of supervised release shall be resumed."

According to the government—and according to the district judge who wrote it—this provision meant that the two years of supervised release would be tolled upon Mr. Isong's deportation and would not begin to run again unless and until Isong returned to the United States and reported to the nearest probation office. We agree. The period of supervised release could only "resume[ ]" upon Mr. Isong's return if suspended during his absence. To "resume," after all, is to "begin again" or "take up after interruption."

See *Webster's Third New International Dictionary* (1981).

Mr. Isong argues that active supervision would "resume" upon his return to the United States, not supervised release itself; actual supervision, he points out, is not usually possible when the defendant is located outside the territorial jurisdiction of the United States.

This argument ignores two significant phrases in the special condition. The condition did not say merely that "supervised release shall be resumed." What it said, rather, was that the *"period of* supervised release shall be resumed." (Emphasis added.) If the "period ... shall be resumed," the resumption must follow an interruption in the period. Moreover, the special condition dealt with Mr. Isong's return to the United States "at any time in the future." If the period of supervised release necessarily expired within two years after Mr. Isong's deportation, the special condition could not apply to a return "at any time in the future." Given the wording of Special Condition 3, we are not persuaded that the condition admits of any construction other than the one given it by the district court.[1]

## III

■ Mr. Isong argues in the alternative that the district court had no authority to provide that the term of supervised release should be tolled. In the absence of an explicit statutory authorization for a tolling order, he contends, such an order was impermissible. We disagree.

The sentencing guidelines give the district court broad discretion to fashion appropriate conditions of supervised release:

> "The court may impose other conditions of supervised release, to the extent that such conditions are reasonably related to (1) the nature and circumstances of the offense and the history and characteristics of the defendant, and (2) the need for the sentence imposed to afford adequate deter-

---

1. It is true that the operation of the provision was conditioned on Mr. Isong's being "permitted" to reenter the United States. Mr. Isong's return to this country after his deportation was an illegal one, and thus he was not "permitted" to reenter—at least not in any normal sense of that term. But Mr. Isong has not attributed any special significance to the district court's choice of verbs, and we likewise decline to do so.

rence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." U.S.S.G. § 5D1.3.

See also 18 U.S.C. § 3583(d)(same).[2]

We think that the tolling order met the specified criteria. Mr. Isong had repeatedly violated immigration laws, and he had flagrantly violated his original sentence within months of its entry. Given his demonstrated disrespect for the law, it seems to us that the tolling order was an appropriate penological measure, designed to ensure that the defendant would be subject to supervision if and when he returned to the United States. The tolling order was also appropriate from a deterrence standpoint. It is unlikely that Mr. Isong could have been supervised after his deportation to Nigeria. Supervised release without supervision is not much of a deterrent to further criminal conduct.

Section 3624(e) of Title 18 provides for the tolling of a period of supervised release if the defendant is imprisoned for another crime for 30 days or more. Mr. Isong argues that the lack of any comparable tolling provision in the deportation context impliedly forbids a tolling order of the sort entered in the case at bar; "*expressio unius est exclusio alterius*," he says in effect.

The force of the maxim is blunted here by the rest of the statutory scheme. When deportation is part of a defendant's sentence, the deportation normally occurs upon the end of any term of imprisonment. An unserved period of supervised release does not defer deportation. 8 U.S.C. § 1252(h). In most instances, supervised release of a defendant who is outside the United States would be essentially meaningless. It seems to us that a tolling order is an appropriate way to make supervised release meaningful for defendants who are going to be deported. This circumstance, coupled with the district court's discretion to set appropriate conditions of supervised release (see U.S.S.G. § 5D1.3), is sufficient to counter any negative implication that might otherwise stem from 18 U.S.C. § 3624(e).

Mr. Isong also presents an argument based on 18 U.S.C. § 3583(i), which permits revocation of a term of supervised release after the expiration of the term if a warrant or summons relating to a violation of a condition of supervised release has been issued prior to the expiration. In the present context, the argument is circular; this case requires us to decide, after all, whether Mr. Isong's term of supervised release had expired. Unfortunately for Mr. Isong, we hold that it did not expire.

**AFFIRMED.**

MOORE, Circuit Judge, dissenting.

Because I believe that, as a general matter at least, the running of a term of supervised release continues after deportation, and because the special conditions contained in the order of supervised release at issue in this case are in accordance with this general rule, I respectfully dissent.

Although Congress has not indicated explicitly whether a district court can toll the running of a term of supervised release while a defendant is deported, the statutory framework governing supervised release suggests that Congress envisioned that supervised release would continue during deportation. According to 18 U.S.C. § 3624(e), which governs the running of a term of supervised release, "[t]he term of supervised release commences on the day the person is released from imprisonment...."[1] The only provision in this section providing for any type of tolling states that "[a] term of supervised release does not run during any period in which the person is imprisoned in connection

---

**2.** This statutory section, on which the dissent relies, states in its final sentence that "[i]f an alien defendant is subject to deportation, the court *may* provide, as a condition of supervised release, that he be deported and remain outside the United States...." (Emphasis added.) The quoted sentence, which is permissive rather than mandatory, is clearly intended to provide district judges with a greater array of sentencing options. We do not believe it should be interpreted to limit the grant of broad discretion—also contained in § 3583(d) and preceding the quoted language—to set "any" condition of supervised release that is "appropriate" and "reasonably related" to the enumerated sentencing factors.

**1.** Section 3624 differs from 18 U.S.C. § 3564(a), which governs the running of a term of probation. That provision provides that "[a] term of probation commences on the day that the sen-

with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days," *id.*, a provision that undisputedly does not apply in this case. The majority recognizes, in light of this statutory language, the potential application of the maxim *"expressio unius est exclusio alterius,"* but it ultimately concludes that "[t]he force of the maxim is blunted here by the rest of the statutory scheme."

I agree with the majority that district courts have broad discretion to set appropriate conditions of supervised release. But also within the statutory scheme of supervised release, and more relevant to the issues in this case, is 18 U.S.C. § 3583—the primary statutory provision governing supervised release. It states in relevant part that "[i]f an alien defendant is subject to deportation, the court may provide, *as a condition of supervised release,* that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation." 18 U.S.C. § 3583(d) (emphasis added). This provision suggests Congress envisioned that terms of supervised release would continue to run after deportation. Other circuits have interpreted § 3583(d) in this manner. *See United States v. Quaye,* 57 F.3d 447, 449 (5th Cir.1995) ("Section 3583(d) authoriz[es] the court to permit the Attorney General to deport [a] defendant *during* his term of supervised release.") (emphasis added); *United States v. Brown,* 54 F.3d 234, 239 (5th Cir. 1995) ("[S]everal cases have incorporated [§ 3583(d)] into their sentence of supervised release, i.e., that, if the defendant is deported, he remain outside of the United States during his term of supervised release. This is a clear indication that a term of supervised release remains in effect after the defendant is deported."). Although § 3583(d) does not answer the specific question whether a district court ever can toll the running of a term of supervised release during deportation, it certainly does not blunt Isong's otherwise valid reliance on the fact that Congress did not include a tolling provision for deportation. And at the least, § 3583(d) indicates that if a court provides that a defendant be deported and remain outside the United States as a condition of his supervised release, the term of supervised release will continue to run during the time the defendant is deported.

The majority asserts that "a tolling order is an appropriate way to make supervised release meaningful for defendants who are going to be deported." This may or may not be true. The purpose of supervised release "is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release." S.Rep. No. 98–225, at 124 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3307. In the case of a deported alien who returns to the United States after numerous years away, it is questionable whether the justifications for supervised release would apply. This policy discussion is largely academic, however. In my view, Congress has decided in § 3583(d) that, at least in the normal deportation scenario, a term of supervised release will continue to run after deportation.

Turning to the special conditions of supervised release imposed by the district court in the present case, it is apparent that the court utilized § 3583(d). The three special conditions imposed by the court provide:

1. Defendant shall comply with agreement on the record at sentencing hearing on 11/30/92. With the advice of counsel the defendant waives all proceedings, formalities, and any appeal with regard to pending deportation proceedings and agrees to leave the country in an expeditious fashion.

2. Should defendant be deported from the United States he shall not re-enter the United States illegally and shall obtain express permission and approval, in writing, of the Attorney General of the United States as a condition of re-entry.

3. In the event defendant is permitted, at any time in the future, to re-enter the United States, defendant shall report

---

tence of probation is imposed, *unless otherwise ordered by the court." Id.* (emphasis added). This section adds further support to the proposi-

tion that Congress is well aware of how to vest district courts with discretion over the running of various time periods.

to the nearest United States Probation Office within 48 hours of re-entry into this country, at which time, period of supervised release shall be resumed. Because Isong was to leave and remain outside the United States *as a condition of* his supervised release, it stretches reason to conclude that the district court could have suspended his term of supervised release during this time. Although the majority is correct that the use of the term "resumed" in the third special condition evidences an intent on the part of the district court to suspend the running of the term of supervised release, I cannot agree that a term of supervised release can be suspended at the same time that certain conditions of that supervised release actively remain in effect. In other words, the majority's conclusion allows time to stand still while various conditions of supervised release continue to operate upon a defendant. Because I believe that the majority's conclusion is inconsistent with § 3583(d) and with the wording of the supervised release order in this case, I respectfully dissent.