**UNITED STATES of America, Appellee,**

v.

**Benjamin BALOGUN, Defendant–Appellant.**

**Docket No. 97–1471**

United States Court of Appeals, Second Circuit.

Argued April 15, 1998.

Decided July 16, 1998.

David C. James, Assistant United States Attorney, Brooklyn, New York (Zachary W. Carter, United States Attorney for the Eastern District of New York, Michelle DeLong, Assistant United States Attorney, Brooklyn, New York, on the brief), for Appellee.

Barry D. Leiwant, New York City, (The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York City, on the brief), for Defendant–Appellant.

Before: KEARSE and MINER, Circuit Judges, and AMON, District Judge *.

KEARSE, Circuit Judge:

Defendant Benjamin Balogun appeals from a judgment entered in the United States District Court for the Eastern District of New York following his plea of guilty before John Gleeson, *Judge,* convicting him of importing heroin into the United States, in violation of 21 U.S.C. §§ 952(a), 960 (1994), and sentencing him principally to 21 months' imprisonment, to be followed by a three-year term of supervised release, and exclusion from the United States, with the term of supervised release to be suspended upon his exclusion and resumed upon his reentry into the United States. On appeal, Balogun contends that the order for the tolling of supervised release exceeded the district court's authority. For the reasons that follow, we agree, and we vacate the judgment and remand for resentencing.

## I.  BACKGROUND

There is no dispute as to the facts. On March 17, 1997, Balogun, a citizen of the United Kingdom who resides in Nigeria, landed in the United States on a flight from Uganda. A customs examination revealed that he carried in his intestinal tract balloons containing some 385 grams of heroin.

Charged with importation of heroin in violation of 21 U.S.C. §§ 952(a) and 960, Balogun pleaded guilty pursuant to a plea agreement in which he agreed, *inter alia,* to stipulate to an administrative order excluding him from the United States, which would be executed immediately upon the completion of his prison term, and to waive all rights to an exclusion hearing before an immigration judge and all rights to appeal from, or otherwise challenge, the exclusion order. In exchange, the government agreed, *inter alia,* to recommend, pursuant to § 5K2.0 of the Sentencing Guidelines ("Guidelines"), a one-step downward departure from the sentencing range prescribed by the Guidelines.

Under the Guidelines, the recommended imprisonment range for Balogun was 24–30 months. The district court granted the parties' joint motion for the one-step downward departure for Balogun's agreement to exclusion upon completion of his prison term, and it sentenced him to 21 months' imprisonment, to be followed by a three-year term of supervised release. In addition, relying on 18 U.S.C. § 3583(d) (1994) and Guidelines § 5D1.3(b) (1995) as empowering it to impose such special conditions of supervised release as it deems appropriate, the court ordered, over Balogun's objection, that the supervised-release term be tolled on the day Balogun is excluded from the United States and be resumed on the day he reenters the United States, if such a reentry occurs before March 18, 2017, *i.e.,* 20 years after the date of Balogun's offense:

> The term of supervised release will commence, pursuant to 18 [U.S.C. § ] 3624(e), on the day the defendant is released from prison. At the conclusion of his prison term, the defendant is to be delivered to the INS to be excluded pursuant to the stipulated order of exclusion. The term of supervised release shall be suspended on the day the defendant is excluded. It will resume on the day he re-enters the United States; defendant must report to a United States Probation Officer within 48 hours of his re-entry. In no event will the period of supervision extend beyond March 17, 2017.

Judgment dated July 18, 1997, at 3. Balogun timely appealed.

In a Memorandum and Order reported at *U.S. v. Balogun,* 971 F.Supp. 775 (1997), the district court explained its reasons for imposing the tolling condition, stating in part as follows:

> Supervised release protects the public from convicted felons and assists those individuals in readjusting to society and learning how to live a life free of criminal activity . . . .

---

* Honorable Carol Bagley Amon, of the United States District Court for the Eastern District of New York, sitting by designation.

Supervised release is intended to impose reasonable restrictions on the Defendant's liberty in light of the Defendant's past criminal behavior, to provide the much-needed guidance of a probation officer, and to discourage activity which may lead to further crimes....

Balogun is eighteen years old. Given his youthfulness and the seriousness of the offense of conviction, the need for meaningful supervision of him will be especially strong. Although that need will be greatest when he is released from jail, a supervised release term that runs while Balogun is out of the country would be an empty gesture. Balogun will be sent to England, and there is no provision for extraterritorial supervision by the probation officer who will be assigned his case. Thus, there will be no way to monitor his compliance with the terms of his supervised release. In short, it will be supervised release without supervision, which is no deterrent to further criminal conduct and hardly an effective means of helping him readjust to society and lead a law-abiding life.... As a practical matter, there will be no supervised release term at all; the probation officer explained at sentencing that the Probation Department's file for a defendant like Balogun is simply closed the moment he is transported out of the country.

Suspending the period of supervised release and resuming it if and when Balogun chooses to re-enter the country will more likely achieve the goals of supervision. It will enhance the prospects that his transition back into our society will be a smooth one, in which he receives the necessary guidance and oversight to avoid criminal activity and become a productive member of society. In turn, this will help to protect the public from potential harm. The benefits to be realized from making the period of supervised release meaningful far outweigh the infringement on the defendant's liberty.

*Id.* at 777.

The court relied on 18 U.S.C. § 3583(d), which allows the district court in addition to enumerated conditions of supervised release to impose "any other condition it considers to be appropriate," *id.,* as authorizing it to suspend supervised release during the period of Balogun's exclusion from the United States, and analogized its order to the provision in 18 U.S.C. § 3624(e) (1994) for suspension of supervised release during a defendant's subsequent imprisonment:

> Because the objectives of supervised release cannot be attained while an individual is in prison, the statute tolls the period of supervised release when a person is incarcerated. Similarly, as discussed above, the goals of supervised release cannot be realized when a defendant is not present in the United States. Given the sentencing court's breadth of discretion, I believe that I am authorized to impose the condition at issue here in order to fulfill the purposes supervised release is designed to accomplish.

971 F.Supp. at 779. Although noting that § 3624 does not mention exclusion from the United States as one of the circumstances requiring the tolling of a supervised-release period, the court found "no reason to believe that Congress thought about deportation and exclusion in formulating the law in this area," and concluded that "[t]he underlying purpose of supervised release would be thwarted were I to rely on an overly rigid reading of the statute." *Id.*

The court also found that the existence of the unexpired supervised-release term would increase Balogun's chances of obtaining permission to reenter the United States lawfully, *see* 8 U.S.C. § 1326(a) (Supp. II 1996) (alien deported or excluded after felony conviction may not lawfully reenter United States without permission of Attorney General), would decrease the attractiveness to him of reentering unlawfully, and would facilitate punishment should he choose the latter course. The court explained that in applying for permission to reenter, Balogun would

> be required to reveal that he is a convicted drug trafficker. The fact that he will be subject to supervision immediately upon re-entering the United States is

likely to be looked upon favorably by the immigration officials who pass on his application for permission to re-enter.

I have no doubt that the reporting requirement upon re-entry may deter Balogun from *illegally* re-entering the United States. Of course, he is not likely to report to a probation officer as required if he enters illegally. Then, if he is later found, he will be subject both to a violation of his supervised release (for not reporting) and to a separate prosecution for illegal re-entry. However, the fact that a supervised release term such as the one imposed here may deter convicted drug traffickers from illegally re-entering the United States is hardly a reason not to impose it.

971 F.Supp. at 777–78 (emphasis in original; footnotes omitted).

## II. DISCUSSION

On appeal, Balogun contends that the district court lacked the authority to order the period of supervised release tolled upon his exclusion from the United States. For the reasons set forth below, we agree.

Section 960 of Title 21, which sets out the penalties for, *inter alia*, the importation of narcotics in violation of 21 U.S.C. § 952, requires that a person convicted of importing more than 100, but less than 1,000, grams of heroin be sentenced to a term of imprisonment, to be followed by a term of supervised release. *See* 21 U.S.C. § 960(b)(2). Section 3583 of Title 18 refers to the factors to be considered by the sentencing court in exercising its discretion to determine the "length of the term and the conditions of supervised release." 18 U.S.C. § 3583(c). That subsection provides that, in making that determination, the court "shall consider the factors set forth in [18 U.S.C. §§ ] 3553(a)(1) [*i.e.*, the nature and circumstances of the offense and the history and characteristics of the defendant], (a)(2)(B) [*i.e.*, the need for deterrence], (a)(2)(C) [*i.e.*, the need to protect the public from further crimes of the defendant], (a)(2)(D) [*e.g.*, the need to provide the defendant with educational or vocational training or medical care], (a)(4) [*i.e.*, the sentencing ranges recommended by the Guidelines],

(a)(5) [*i.e.*, Sentencing Commission policy statements], and (a)(6) [*i.e.*, the need to avoid sentence disparities among defendants with similar records who are found guilty of similar conduct]." 18 U.S.C. § 3583(c). Subsection (d) of § 3583, describing "conditions of supervised release," provides that the court "shall" impose certain conditions, such as forbidding the defendant to commit a crime during his supervised-release period, *see id.* § 3583(d), and gives the court discretion to impose others:

The *court may order, as a further condition of supervised release,* to the extent that such condition—

(1) is reasonably related to the factors set forth in [18 U.S.C. §§ ] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D);

(2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in [18 U.S.C. §§ ] 3553(a)(2)(B), (a)(2)(C), (a)(2)(D); and

(3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. [§ ] 994(a);

any condition set forth as a discretionary condition of probation in [18 U.S.C. §§ ] 3563(b)(1) through (b)(10) and (b)(12) through (b)(20), and *any other condition it considers to be appropriate.* If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation.

18 U.S.C. § 3583(d) (emphasis added).

None of the mandatory conditions of supervised release specified in § 3583(d), nor any of the discretionary conditions of probation set out in 18 U.S.C. § 3563(b) and incorporated by reference into § 3583(d), deals with a suspension of the period of supervision. Hence the question before us is whether the tolling of supervised release while an excluded or deported alien who has served his prison term remains outside of the United States is within § 3583(d)'s authorization for the sentencing court to impose "any other

condition it considers to be appropriate." Several aspects of the relevant statutory provisions persuade us that the answer is "no," for although the phrase "any other condition" standing alone appears to be unlimited, we are to view it not as standing alone but in context, *see, e.g., King v. St. Vincent's Hospital,* 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991); *Shell Oil Co. v. Iowa Department of Revenue,* 488 U.S. 19, 25–26, 109 S.Ct. 278, 102 L.Ed.2d 186 (1988); and in this context, as in others, *see, e.g., United States v. Abrar,* 58 F.3d 43 (2d Cir.1995) (vacating supervised-release condition that defendant repay his personal debts), "we do not read this provision as providing untrammeled discretion," *id.* at 47.

First, the opening paragraph of § 3583(d) itself, quoted above, plainly reveals that the word "condition" as used later in the subsection means a "condition of supervised release," for it is only "as a further condition of supervised release" that "any other condition" may be imposed.

Second, examining the other conditions of supervised release that are specified and referred to in § 3583(d), we observe that virtually all of them are requirements with which a defendant himself is ordered to comply. For example, as mandatory conditions of supervised release, the court must order, *inter alia,* "that the defendant not commit another Federal, State, or local crime during the term of supervision" and *"that the defendant not unlawfully possess* a controlled substance." 18 U.S.C. § 3583(d) (emphases added). Similarly, each of the discretionary conditions set out in § 3563(b), incorporated by reference in § 3583(d), is a condition with which the defendant himself is required to comply. For example, the court may order *"that the defendant," id.* § 3563(b) (Supp. II 1996) (emphasis added) "support his dependents and meet other family responsibilities," *id.* § 3563(b)(1), "work conscientiously at suitable employment," *id.* § 3563(b)(4), "refrain from frequenting specified kinds of places," *id.* § 3563(b)(6), and "remain within the jurisdiction of the court, unless granted permission to leave by the court or a probation officer," *id.* § 3563(b)(14). And although the supervision of the defendant during the supervised-release period is to be carried out by a probation officer, 18 U.S.C. § 3624(e), the "conditions" of supervised release concern the defendant's own duties, specifying, for example, that "the defendant" must *"answer inquiries by* a probation officer" 18 U.S.C. § 3563(b)(17), and must *"permit a* probation officer to visit him at his home or elsewhere as specified by the court," *id.* § 3563(b)(16) (emphases added).

The only provision of which we are aware that describes a possible supervised-release condition that is not wholly an order that the defendant himself do or refrain from doing something is the final sentence of § 3583(d), which states that

> If an alien defendant is subject to deportation, the court may provide, *as a condition of supervised release, that he be deported* and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation.

(Emphasis added.) However, we view the principal thrust of this "condition" as the requirement that the defendant "remain outside the United States"; the requirement that he be deported is merely the necessary precursor to the constraint imposed on the conduct of the defendant, *i.e.,* that he stay out. *Cf. United States v. Sweeney,* 914 F.2d 1260, 1263 (9th Cir.1990) ("[a]ll of the mandatory and discretionary probation conditions listed in 18 U.S.C. § 3563 ... impose conditions on defendants and none on a third party").

■ In sum, virtually every "condition" mentioned in the statute as a possible "condition of supervised release" is one that expressly confines the conduct of the defendant. Since we presume that Congress does not employ the same word to convey different meanings within the same statute, *see, e.g., Sullivan v. Stroop,* 496 U.S. 478, 484, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990); *Sorenson v. Secretary of Treasury,* 475 U.S. 851, 860, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986), we think it probable that the phrase "any other conditions" was likewise intended to refer to other requirements that the defendant himself do or refrain from doing specified acts.

The current Guidelines reflecting 18 U.S.C. § 3583 similarly describe the mandatory conditions of supervised release in terms of what "the defendant shall" do, *e.g.,* Guidelines § 5D1.3(a)(5)-(6) (1997), what "the defendant shall not" do, *e.g., id.* § 5D1.3(a)(1)-(2), or what "the defendant shall refrain from" doing, *e.g., id.* § 5D1.3(a)(4). The Guidelines also recommend " 'standard' " conditions for supervised release, each of which begins with or contains the phrase "the defendant shall" or "the defendant shall not." *Id.* § 5D1.3(c)(1)-(15). And in recommending five " 'special' " conditions of supervised release, subsection (d) of this Guideline in each instance uses the phrase "requiring [or requiring that] the defendant" or "prohibiting the defendant." *Id.* § 5D1.3(d)(1)-(5).

Thus, both the statutory examples of "conditions of supervised release" and the Guidelines recommendations for such conditions describe specific types of conduct of the defendant that are constrained. In contrast, we view the *timing* of the term of supervised release—*i.e.,* its beginning, its end, or its interruption—as substantively different, in part because as to timing the defendant is entirely passive. An order specifying the beginning, running, or ending of the period is not itself an order that the defendant do or refrain from doing something.

We are further influenced toward this view by the facts that the statute itself contains express provisions both with respect to the start of the supervised-release period and with respect to one authorized suspension of that period. First, although the length of the term, within the limits set out in various provisions of the statute, is left to the sentencing court's discretion, § 3624 of Title 18 provides that "[t]he term of supervised release commences on the day the person is released from imprisonment." 18 U.S.C. § 3624(e). Congress clearly meant there to be no hiatus between the term of imprisonment and the term of supervised release, for this section provides that "[a] prisoner whose sentence includes a term of supervised release after imprisonment *shall be released* by the Bureau of Prisons *to the supervision of a probation officer* who shall, during the term

imposed, supervise the person released." *Id.* (emphasis added).

Section 3624(e) also contains an express provision for the tolling or interruption of the supervised-release period of a defendant who, for a not insubstantial time, is returned to prison:

A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days.

*Id.* No similar tolling provision is present with respect to a period during which the person is deported or excluded from the United States and required to remain away. Thus, although in § 3583(d) Congress provided that the court could order that an alien defendant be deported prior to the expiration of his supervised-release term, and although in § 3624(e) it provided for the tolling of the supervised-release term of a defendant while imprisoned for 30 days or more, Congress made no provision for tolling the supervised-release term during deportation or exclusion.

■ We decline to infer that the difference in treatment of the continuity of the supervised-release term with respect to reincarceration and deportation/exclusion was simply an oversight, for the postponement of supervision following the defendant's release from prison seems antithetical to the purposes of the statute. The legislative history makes plain that Congress intended the supervised-release term to be used not to punish the defendant, *see, e.g.,* S. Rep. 98–225, at 125 (1984) ("S.Rep."), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3308 ("[t]he term of supervised release ... may not be imposed for purposes of punishment or incapacitation"), but rather "to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison ... but still needs supervision and training programs after release." *Id.* at 124, *reprinted in* 1984 U.S.C.C.A.N. at 3307. The goal of easing the defendant's transition from prison life to community life is the basis for the provision in § 3624(e) that supervised

release is to begin on the very day the defendant is released from prison, for that provision brooks no hiatus, and is similarly the basis for the provision in the same section for a suspension of supervised release while the defendant is reincarcerated for 30 days or longer, for while the defendant is in prison there generally is no transition to community life.

Further, the legislative history shows that Congress meant not to "waste[ ]" the resources of the probation offices "on supervisory services for releasees who do not need them." S. Rep. at 57, *reprinted in* 1984 U.S.C.C.A.N. at 3240; *see also id.* at 125, *reprinted in* 1984 U.S.C.C.A.N. at 3308 ("probation officers will only be supervising those releasees from prison who actually need supervision"). The tolling of the term of supervised release for a period of time following the defendant's release, however, disserves rather than advances these goals. Here, for example, there seems little basis for a current prediction that if Balogun reenters the United States 15 years after his release from prison and exclusion from the United States, he will at that time require supervision to ease his transition from prison life to community life. Nor is there any reason to predict that he will require vocational or educational training at that time. Yet the automatic effect of the district court's order would be to require that a probation officer supervise Balogun for three years from the date of his reentry.

Finally, we also think it pertinent that in the Immigration Act, Congress provided that an alien convicted of a narcotics offense should be subject to special proceedings to "assure[ ] expeditious removal following the end of the alien's incarceration for the underlying sentence," 8 U.S.C. § 1228(a)(1) (Supp. II 1996), and stated that "supervised release ... is not a reason to defer removal," *id.* § 1231(a)(4)(A). Plainly, the combination of these provisions means that a released and removed alien may have an unexpired term of supervised release. *See, e.g., United States v. Londono,* 100 F.3d 236, 241 (2d Cir.1996). That possibility is further recognized in § 3583(d) which, as discussed above, permits the court to order the released and removed alien to remain outside of the United States as a condition of his supervised release.

In light of these expeditious-removal provisions and of Congress's express provision for a suspension of the supervised-release term in one instance without providing for a similar suspension while a defendant is excluded from the United States, and in light of supervised release's primary function of facilitating the defendant's transition from prison life to community life, we conclude that Congress did not intend to authorize the courts to toll the supervised-release term after the defendant's release from prison for a period during which he is deported or excluded from the United States.

The only other Court of Appeals decisions of which we are aware dealing with this issue are those of the Sixth Circuit in *United States v. Isong,* 111 F.3d 41 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 212, 139 L.Ed.2d 147 (1997) (*"Isong I "*), and *United States v. Isong,* 111 F.3d 428 (6th Cir.), *cert. denied,* —— U.S. ——, 118 U.S. 212, 139 L.Ed.2d 147 (1997) (*"Isong II "*). In both, the court rejected challenges to orders that had tolled supervised release until such future time as the defendants might reenter the United States, concluding that the statutory and Guidelines scheme granted the district court such authority. For the reasons we have discussed above, we reach the contrary conclusion, and accordingly, we respectfully disagree.

## CONCLUSION

We have considered all of the government's arguments in support of the district court's order for the suspension of Balogun's supervised-release term upon his exclusion from the United States and the resumption of that term upon his reentry into the United States, and have found them unpersuasive. The judgment of the district court is vacated, and the case is remanded for resentencing consistent with this opinion.