UNITED STATES of America,

v.

**Michael RIVARD**

No. CRIM. 2:93–CR–16–1.

United States District Court,
D. Vermont.

Oct. 27, 2000.

John M. Conroy, AUSA, Office of the United States Attorney, District of Vermont, Burlington, VT, for U.S. Attorneys.

---

86. *Id.*

Ernest Marvin Allen, III, Stetler, Allen & Kampmann, Burlington, VT, for Michael G. Rivard.

Michael G. Rivard, Colchester, VT, pro se.

## OPINION AND ORDER

SESSIONS, District Judge.

Defendant Michael Rivard ("Rivard") filed a motion to dismiss the government's petition of revocation of Rivard's supervised release, alleging that the Court no longer has jurisdiction over him because his term of supervised release expired before a summons was issued in response to the government's petition. The Court agrees with Rivard that it does not have jurisdiction over this matter and therefore GRANTS his motion.

## I. Background

In January, 1993, Rivard was sentenced in Vermont state court to a five-to-ten-year term of imprisonment. On September 13, 1993, after he pled guilty to federal mail and wire fraud, this Court sentenced Rivard to eighteen months in prison to run concurrently with the state sentence, followed by two years of supervised release. Rivard was released from state custody on May 23, 1997, at which point his period of supervised release began to run.

On January 16, 1998, a probation officer filed a petition alleging that Rivard had violated various conditions of his supervised release. Four months later, on May 18, 1998, this Court had a final hearing on the petition at which the Court found that Rivard had violated the conditions of his supervised release. Thus, the Court extended Rivard's period of supervised release to three years [1] and ordered that during the 115-day period between the

filing of the petition by the probation officer on January 16, 1998, and the final hearing on May 18, 1998, Rivard's supervised release was tolled.[2] Therefore, the Court ruled, the period of supervised release was to be extended by 115 days in addition to the extra year.

On July 28, 2000, a second petition was filed by the probation office alleging that Rivard had newly violated the terms of his supervised release. A summons was issued in response to that petition on August 8, 2000. According to the government, during the 115-day period between the filing of the petition and the final hearing, Rivard "made himself unavailable for supervision by consistently denying that the Court had jurisdiction over him and by repeatedly frustrating all efforts to supervise his conduct." Gov't's Response to Defendant's Motion to Dismiss, at 2 (Paper 57). However, the government admits that Rivard never "absconded from the district." *Id.* Rivard now moves to dismiss the petition of revocation, alleging that the Court no longer has jurisdiction because his term of supervised release expired on May 23, 2000, before the summons pursuant to the petition issued.

## II. Discussion

The issue in this case is whether the Court had the authority to toll the period of supervised release for the 115 days intervening between the filing of the petition for revocation by the probation office and the final hearing on the supervised release violations. If the Court did not have such authority, then Rivard's period of supervised release expired on May 23, 2000 and the Court no longer has jurisdiction to hear the government's petition because the summons was issued after the expiration of Rivard's supervised release period.

---

1. The Court's decision to extend Rivard's period of supervised release was upheld by the Second Circuit. *See United States v. Rivard*, 184 F.3d 176, 177 (2d Cir.1999) (per curiam).

2. Significantly, although the Court purported to toll Rivard's period of supervised release during this time, Rivard nevertheless remained under the terms of supervised release during the entire three years between May 23, 1997, and May 23, 2000.

It appears that the Second Circuit has never addressed the exact question the Court is confronted with here—that is, whether a district court has the general authority to toll a period of supervised release during the pendency of a hearing on an alleged release violation. However, in *United States v. Balogun*, 146 F.3d 141 (2d Cir.1998), the Second Circuit addressed the question of whether a district judge has the authority to toll a defendant's period of supervised release while he is excluded from the country. The district court in *Balogun* sentenced the defendant to a three-year period of supervised release, ordered that he be deported as a special condition of his release, and ordered that the three-year period be tolled during the defendant's exclusion from the country. Were the defendant to re-enter the United States, under the district court's order, the period of supervised release was to resume.[3] The Second Circuit reversed, holding that the district court did not have the authority to toll the defendant's period of supervised release during his exclusion from the United States.

Examining the text of the statute governing supervised release and considering the intent of Congress, the Court of Appeals in *Balogun* noted that while Congress authorized the sentencing court to impose "any other condition [to supervised release] it considers to be appropriate," 18 U.S.C. § 3583(d), the phrase "any other condition" does not give judges "untrammeled discretion." *Balogun*, 146 F.3d at 145 (citations omitted). That is, by "conditions of supervised release," Congress intended to refer to constraints imposed on the conduct of the defendant, and not the

timing of the term of supervised release. *See id.* at 145–46.

Furthermore, the Second Circuit reasoned, Congress expressly provided for tolling of the period of supervised release for defendants who are "imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days," but did not provide for such tolling in the case of deportation. *Id.* at 146 (citing 18 U.S.C. § 3624(e)). The *Balogun* court "decline[d] to infer that the difference in treatment of the continuity of the supervised-release term with respect to reincarceration and deportation/exclusion was simply an oversight." *Id.* Thus, the Second Circuit ruled, the district court did not have authority to toll the period of supervised release during the defendant's exclusion from the country.[4]

■ Although *Balogun* addressed only the narrow issue of a court's authority to toll the running of a period of supervised release during deportation—and not tolling of supervised release in general or in the context presented by the instant case—its holding and reasoning, as well as general rules of statutory interpretation, inform the Court's decision here. While expressly providing for the tolling of supervised release when a defendant is reincarcerated for more than thirty days, Congress did not see fit to provide for such tolling during the pendency of a hearing on a petition for a release violation. Furthermore, in 1994, Congress amended the statute governing supervised release to specifically address the jurisdiction of district courts over release violations after the period of supervised release has ex-

---

**3.** The district court held, however, that in no event was the period of supervised release to extend beyond March 17, 2017, twenty years after the offense for which the defendant had been convicted. *See Balogun*, 146 F.3d at 142.

**4.** *See also United States v. Juan–Manuel*, 222 F.3d 480, 488 (8th Cir.2000) (agreeing with

the Second Circuit that district courts do not have the authority to toll periods of supervised release while defendants are excluded from the country). *But see United States v. Isong*, 111 F.3d 41 (6th Cir.1997) (coming to opposite conclusion); *United States v. Isong*, 111 F.3d 428 (6th Cir.1997) (same).

pired.[5] While Congress could easily have provided for tolling of the supervised release period under such circumstances, it did not. Instead, it provided simply that

> [t]he power of a court to revoke a term of supervised release for violation of a condition of supervised release ... extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

18 U.S.C. § 3583(i). The statute specifically provides that the court's power is extended *"beyond the expiration of the term of supervised release,"* making clear that it is the power of the court and not the term itself—which has plainly expired—that is extended.[6] The Court must presume that Congress understood this distinction and purposefully phrased the amendment to extend the jurisdiction of courts rather than to toll the running of supervised release.

Therefore, the Court concludes that Congress did not intend to provide courts with the authority to toll a defendant's period of supervised release during the time after a petition for a violation is filed and before the final hearing on the matter. Applying the maxim *"expressio unius est exclusio alterius"* [7] to the law governing supervised release, we must assume that by granting judges the authority to toll supervised release in one context (reincarceration) and neglecting to do so in all others, that Congress meant to deprive judges of the authority to toll periods of supervised release where reincarceration was not at issue.[8]

Moreover, it is important to note that Rivard remained under supervision during the 115 days from January 16, 1998, to May 23, 1998, the period of time during which the Court purported to toll his supervised release.[9] It would be inequitable to require Rivard to submit to an extra period of supervised release when he has already served his full sentence.

■ Thus, under *Balogun,* and taking into consideration the plain language of the

5. The statute was amended by § 110505 of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, 108 Stat. 1796, which took effect on September 13, 1994. *See United States v. Morales,* 45 F.3d 693, 696 n. 1 (2d Cir.1995); *United States v. Crusco,* No. 90 CR. 945 JES., 2000 WL 776906, at *2 n. 5 (S.D.N.Y. June 15, 2000).

6. At least one court has characterized this provision as one governing the *tolling* of supervised release. *See Juan–Manuel,* 222 F.3d at 487–88. However, by its terms, this provision clearly extends only the *power* of the court, and not the period itself. Furthermore, the Second Circuit has recognized the distinction in this context between tolling of the supervised release period and extension of the Court's jurisdiction beyond the expiration of the period. *See Morales,* 45 F.3d at 700.

7. This maxim is defined as "[a] canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative." *Black's Law Dictionary* 602 (7th ed.1999). Further, it has been said to be "based on the assumption of legislative omniscience, because it would make sense only if all omissions in legislative

drafting were deliberate." Richard A Posner, *The Federal Courts: Crisis and Reform* 282 (1985).

8. Even if Congress had provided for tolling in this context—where a summons pursuant to a petition for a release violation is issued prior to the expiration of the period of supervised release—rather than simply extending the court's jurisdiction over the violation, the authority for such tolling would not apply to Rivard's case, since the allegedly tolled period at issue here was in the *middle* of his supervised release period.

9. Had Rivard absconded from the district, the government might be able to argue that there is a common law basis for tolling of the running of the supervised release period. *See, e.g., United States v. Crane,* 979 F.2d 687 (9th Cir.1992) (holding that a defendant's fugitive status tolled the running of his period of supervised release). However, since there is no evidence that Rivard was ever a fugitive during his term of supervised release, the Court does not address this potential argument.

governing statute and the equities of the particular case, the Court concludes that it did not have authority to toll Rivard's period of supervised release during the 115–day period at issue here, and his term of supervised release expired on May 17, 2000. Because the summons was issued on August 8, 2000, after the expiration of the supervised release term, the Court does not have jurisdiction to hear the claims in the petition of revocation.[10]

## III. Conclusion

Wherefore, the Court GRANTS Rivard's motion to dismiss the petition of revocation.

---

**10.** At least one other court in this circuit has addressed the issue of the court's jurisdiction over release violations after expiration of the release term, and it agreed that where no summons or warrant has issued before the expiration of the supervised release period, the court does not have jurisdiction to hear claims of such violations. *See Crusco,* 2000 WL 776906, at *1.