**UNITED STATES of America,**
**Appellee,**

v.

**Michael G. RIVARD, Defendant–**
**Appellant.**

**No. 1168, Docket No. 98–1369.**

United States Court of Appeals,
Second Circuit.

Argued March 2, 1999.

Decided July 13, 1999.

Ernest M. Allen, Burlington, VT, (Stetler, Allen & Kampmann, on the brief), for Defendant–Appellant.

John M. Conroy, Assistant United States Attorney, Burlington, VT (Charles R. Tetzlaff, United States Attorney for the District of Vermont, David V. Kirby, Chief, Criminal Division, on the brief) for Appellee.

Before: JACOBS and SOTOMAYOR, Circuit Judges, and SAND, District Judge.*

PER CURIAM.

Upon a finding that Michael Rivard violated the conditions of his supervised release, the United States District Court for the District of Vermont (Sessions, *J.*) has extended Rivard's two-year term of supervised release by a third year. Rivard appeals on the sole ground that the two-year term of supervised release had expired prior to the date of any alleged violations. It is undisputed that Rivard's term of federal supervised release commenced at such time as he was released from "imprisonment" by the State of Vermont. *See* 18 U.S.C. § 3624(e) (1994 & West Supp.1998). Rivard moved to dismiss the government's petition for revocation of supervised release on the ground that his placement in a Vermont work-release program (called "daily interrupt status")—*more* than two years prior to the alleged violations—constituted release from "imprisonment" within the meaning of the statute.

We affirm the denial of the motion to dismiss, and the extension of Rivard's term of supervised release as ordered by the district court.

## BACKGROUND

In January 1993, Rivard was sentenced in Vermont state court to a five-to-ten year term of imprisonment after his guilty plea to two state counts of false pretenses. On September 13, 1993, after a plea of guilty on federal mail and wire fraud charges, Rivard was sentenced by the federal district court in Vermont to a term of 18 months in prison to run concurrently with the state sentence, and to two years of supervised release.

Rivard's federal prison term expired on December 31, 1994. Because he was then still serving his state sentence, Rivard was correctly advised by letter from a federal probation officer that "your term of supervised release will not commence until your release from state custody."

On May 3, 1995, a Vermont state court issued an amended mittimus [1] to the Vermont Commissioner of Corrections ordering that Rivard be allowed intermittent release to find a job outside the prison walls so that he could participate in a work-release program. When Rivard found employment, he was placed on "daily interrupt status," which allowed him to live and work outside the prison every weekday on which he was employed full-time; he was required to return to prison on weekends. The amended mittimus provided:

*1. The balance of defendant's sentence* shall be served on daily interrupt Monday through Friday, 6 AM to 6 PM, as necessary to search for and secure employment [sic]; said release for work search not to exceed thirty days from the date of this order. In the event defendant secures employment, he shall be released as necessary for work, for the balance of sentence, one calendar day (24 hours) for every 8 hours work performed in that same calendar day; said *release not to exceed 5 calendar days* (120 hours) per week.

\*   \*   \*

3. If after employment defendant becomes unemployed due to involuntary or voluntary [sic] termination, or due to illness or infirmity, defendant shall report immediately to serve the balance of his sentence without release. . . .

*4. While so employed on interrupt status defendant shall comply with all re-*

---

\* The Honorable Leonard B. Sand of the United States District Court for the Southern District of New York, sitting by designation.

1. A mittimus is "a precept in writing, issuing from a court or magistrate, directed to ... the jailer, commanding him to receive and safely keep such person until he shall be delivered by due course of law." Black's Law Dictionary 1002 (6th ed.1990).

*quirements of the Department of Corrections.*

(Emphasis added.) Rivard was on daily interrupt status until his parole from state prison on May 23, 1997.

The United States Probation Officer learned of Rivard's release on parole in November 1997, and advised Rivard to report to his office on November 26, 1997 to discuss the conditions of his federal supervised release. Rivard did so. Two days after this initial meeting, however, Rivard asserted that his term of federal supervised release had begun when he was placed on daily interrupt status—*more* than two years earlier—and therefore that the two-year term had already run. Fortified in part by this position, Rivard refused to comply with the directions of the Probation Office—including instructions to report to his probation officer—and other conditions of his supervised release.

On January 16, 1998, Rivard's probation officer filed a supervised release violation report with the district court alleging that Rivard violated the conditions of his federal supervised release by, *inter alia,* failing to report when required. At a hearing on May 18, 1998, Rivard admitted to the conduct alleged in the petition, but argued that the violations post-dated his term of federal supervised release, which (he argued) ended on May 3, 1997, two years *after* the date he was placed on daily interrupt status. The government responded that the two-year term of federal supervised release began on May 23, 1997 (the date of parole), and would continue until May 23, 1999.

The district court concluded that notwithstanding Rivard's daily interrupt status after May 3, 1995, he was still serving a term of "imprisonment" within the meaning of 18 U.S.C. § 3624(e) during that time, and thus the term of federal supervised release did not begin until Rivard was paroled from his state sentence. The district court denied Rivard's motion to dismiss the supervised release violation, and extended his two-year term of supervised release by a third year. Rivard appeals the district court's finding that he was imprisoned while on daily interrupt status.

## DISCUSSION

■ District courts have discretion to punish violations of supervised release, including by extension of the term of supervised release to the maximum amount permitted by statute. *See* 18 U.S.C. § 3583(e)(2); *see also United States v. Gibbs,* 58 F.3d 36, 38 (2d Cir.1995). The only question on appeal is whether Rivard was *on* supervised release at the time of the admitted violations.

The starting date for federal supervised release

commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release.

18 U.S.C.A. § 3624(e) (West Supp.1998). Thus Rivard's term of federal supervised release commenced at such time as he was released from "imprisonment." Rivard's appeal therefore turns on whether he was released from "imprisonment" when he was placed on daily interrupt status on May 3, 1995, or rather when he was paroled on May 23, 1997.

During the time he was on daily interrupt status, Rivard was at large Monday through Friday under the terms of the amended mittimus. Although (as it happens) the Vermont Department of Corrections furloughed Rivard each weekend pursuant to 28 V.S.A. § 808, Rivard concedes that he was considered "imprisoned" on weekends under Vermont law. Rivard's argument is that:

(i) the liberty he enjoyed on weekdays is analogous to parole status, or (alternatively) to pre-parole status; (ii) liberty on parole or on pre-parole release is not

imprisonment within the meaning of § 3624(e); and (iii) his federal supervised release period began and continued to run—despite his conceded imprisonment on weekends—by virtue of the following provision and proviso in the statute: "[a] term of supervised release does not run during any period in which the person is imprisoned ... unless the imprisonment is for a period of less than 30 consecutive days." 18 U.S.C.A. § 3624(e) (West Supp.1998). This argument, even on its own terms, works only if the daily interrupt status does not constitute imprisonment, either (1) by virtue of its particular characteristics, or (2) by analogy to parole or pre-parole release.

*1. Characteristics of Daily Interrupt Status.* The amended mittimus sets forth indulgent and trusting terms of imprisonment, but they are terms of imprisonment, not of release. Rivard was permitted out of prison only on days he worked outside of prison, had to return to prison after work unless he worked a full eight-hour day, and the whole arrangement depended on his keeping the job. Each day he was subject to return to his cell, and he was continuously subject to "all requirements of the Department of Corrections." Therefore, although Rivard had substantial license under this program, he was closely leashed to prison life, and thus was not released from "imprisonment" by the terms of the mittimus.

*2. Analogy to Parole or Pre-parole.* Rivard argues that release on daily interrupt status is analogous to parole, which is arguably a release from "imprisonment" within the meaning of § 3624(e). However, daily interrupt status is easily distinguishable from parole. Unlike a parolee, Rivard enjoyed weekday liberty only, and under certain conditions would be required to return to prison full-time to serve the remainder of his sentence. Moreover, while Rivard was on daily interrupt status, he was directed, supervised, and controlled by the Vermont Department of Corrections; parolees are supervised by a separate state agency.

Rivard also analogizes Vermont's daily interrupt program to certain other pre-parole programs that arguably constitute a release from "imprisonment." *See Young v. Harper,* 520 U.S. 143, 148–49, 117 S.Ct. 1148, 137 L.Ed.2d 270 (1997) (holding that Oklahoma's pre-parole release program was sufficiently like parole as to create a protected liberty interest warranting the same pre-termination due process procedures afforded to parolees).

All the same grounds of distinction applicable to Rivard's analogy to parole apply to his pre-parole analogy. Rivard was (on weekdays) given substantial freedom to live outside the prison walls, but he was required to return to prison each weekend as well as on days when he did not work an eight-hour day. In *Young,* by contrast, the pre-parolee was "free of the incidents of imprisonment" each day, and was obligated only to attend a weekly meeting with a parole officer. *See Young,* 520 U.S. at 148–50, 117 S.Ct. 1148. Moreover, while prisoners participating in the pre-parole release program in *Young* were entitled to a pre-termination hearing, Rivard would be re-incarcerated if he lost his job or otherwise violated the terms of daily interrupt status.[2] *Finally, unlike the pre-parolee in Young,* Rivard was supervised by (and subject to the rules and regulations of) the Vermont State Department of Corrections rather than the state probation department.

Each of these distinctions reflects a significant tie between the prison and the prisoner on daily interrupt status. This connection to the prison is sufficient to distinguish parole or pre-parole release programs, and to conclude that Rivard was "imprisoned" within the meaning of

---

**2.** Because Rivard does not claim that he was entitled to a pre-termination hearing in the event he violated the conditions of daily interrupt status, we express no opinion as to whether Vermont's daily interrupt status gives rise to a protected liberty interest.

§ 3624(e) while on daily interrupt status, despite the fact that he was not behind prison walls.

## CONCLUSION

Rivard's placement on Vermont's daily interrupt status was not a release from "imprisonment" within the meaning of 18 U.S.C. § 3624(e). Therefore, we conclude that he was serving his term of supervised release at the time of the admitted violations, and as such the district court was within its discretion in extending Rivard's term of supervised release.