UNITED STATES of America, Plaintiff–Appellee,

v.

Arturo PEREZ–RUIZ, Defendant–Appellant.

No. 98–4007.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 19, 1999.

Decided March 9, 1999.

Stephen A. Kubiatowski (argued), Estaban F. Sanchez, Office of the United States Attorney, Springfield, IL, for Plaintiff-Appellee.

Eric M. Schwing (argued), Schwing & Salus, Dale A. Schempp, Springfield, IL, for Defendant-Appellant.

Before EASTERBROOK, KANNE, and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

■ A sentence of 15 months' imprisonment following a guilty plea on a charge of transporting illegal aliens from Arizona to Chicago, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), has led to this appeal. According to the Sentencing Guidelines, the base offense level for this offense is 12, plus 3 if the defendant transported more than 6 (but fewer than 25) aliens, as Arturo Perez-Ruiz did. U.S.S.G. § 2L1.1(a)(2), (b)(2)(A). The district judge deducted 2 levels for acceptance of responsibility, for a final level of 13 and a sentencing range of 12 to 18 months for a first offender such as Perez-Ruiz, who contends that the judge should have subtracted another 3 levels under § 2L1.1(b)(1)(A) because "the offense was committed other than for profit". That would have produced a range of 6 to 12 months, in Zone B of the sentencing table. Zone B gives a judge the option of specifying that most of the sentence be served in community confinement or home detention. U.S.S.G. § 5C1.1(c).

This criminal *venture* was for profit. Each alien paid to be smuggled into the United States and transported to Chicago. Most of the money went to Antonio Silva-Rocha, who covered Perez-Ruiz's expenses for the trip to Chicago but did not give him a share of the venture's revenues. Perez-Ruiz was hired help, and Silva-Rocha, as the entrepreneur, kept the net after expenses. Perez-Ruiz's compensation was the value of the trip—for Ruiz-Perez had lined up a job in Chicago and needed transportation. This Silva-Rocha supplied, in exchange for Perez-Ruiz's aid in driving. Silva-Rocha was at the wheel when the police stopped the van near Lincoln, Illinois, for a traffic infraction, and the officer became suspicious because 15 Spanish-speaking persons (13 illegal aliens plus Perez-Ruiz and Silva-Rocha) were crammed into one van. The aliens confessed to immigration officials. (Perez-Ruiz himself told the immigration officials that he was an illegal alien by the name of Juan Rascon-Perez, perhaps hoping that he would be shipped to Mexico without further inquiry; but he is in fact a U.S. citizen and was prosecuted when his identity was discovered.)

■ According to the Sentencing Commission, " 'The offense was committed other than for profit' means that there was no payment or expectation of payment for the smuggling, transporting, or harboring of any of the unlawful aliens." U.S.S.G. § 2L1.1 Application Note 1 ¶ 1. Perez-Ruiz received in-kind compensation—transportation from Arizona to Chicago—for his role in the offense. He contends that in-kind compensation cannot be "payment," but this is untenable. Compensation is payment, and whether in specie or in some other form does not matter. This would be clear enough if Silva-Rocha had compensated Perez-Ruiz by allowing him to keep the van once the group reached Chicago. Perez-Ruiz could have sold the van for cash, or used it in lieu of buying his own vehicle; in either event the proceeds realized (or outlay avoided) are the payment. Transportation differs from this example in the sense that it could not be resold after Perez-Ruiz reached Chicago, but it certainly enabled him to avoid the cost of purchasing a trip. The price of a bus ticket from Arizona to Chicago would be a good measure of the cost avoided, and thus the effective payment. If Silva-Rocha had given Perez-Ruiz a plane ticket for his services, the "payment" would be obvious; the treatment of in-kind transportation should be identical.

Things might be otherwise if Perez-Ruiz did not want to be in Chicago. Suppose W.C. Fields drove a group of aliens to Philadelphia. Fields wanted to be anywhere in

the world *except* Philadelphia; transportation to that city therefore could not be viewed as a "profit" or "payment" from his perspective, but would be a pure act of charity. This is a staple in the law of taxation, where the clarity of the principle that imputed income (such as a parking space or fancy meals furnished to a business executive) should be taxed runs into the practical difficulty that the in-kind payment may be something the recipient does not value (such as a trip to a Mozart opera by someone who much prefers a Spice Girls concert). None of these difficulties arises when the in-kind service is desired by the recipient, as Perez–Ruiz valued the trip to Chicago. He received some "payment" for his acts, and as even a modest payment counts as "profit" the judgment must be

AFFIRMED.