# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2249

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Efrain Juan-Manuel, also known as | * | District of Nebraska |
| Gasper Leon-Juan, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 14, 1999

Filed: August 3, 2000

_____

Before McMILLIAN, JOHN R. GIBSON and MAGILL, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Efrain Juan-Manuel (defendant) appeals from a final sentence entered in the United States District Court[1] for the District of Nebraska after he pled guilty to one count of illegal reentry into the United States following deportation and one count of transporting an illegal alien. See United States v. Juan-Manuel, No. 8:99CR-2 (D. Neb. Apr. 14, 1999) (judgment). For reversal, defendant argues that (1) the district

_____

[1]The Honorable William G. Cambridge, United States District Judge for the District of Nebraska.

court improperly denied him a three-level sentencing reduction pursuant to U.S.S.G. § 2L1.1(b)(1) and (2) the district court acted without authority in ordering his term of supervised release to be suspended upon deportation for any period of time that he is outside the United States or is illegally within the United States without the knowledge of the probation office. For the reasons set forth below, we affirm in part, reverse in part, modify the judgment, and affirm the judgment as modified.

Jurisdiction in the district court was proper based upon 18 U.S.C. § 3231. Jurisdiction in this court is proper based upon 18 U.S.C. § 3742(a). The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(b).

## Background

The background facts are undisputed. In December 1998, defendant and several other individuals illegally entered the United States from Mexico in two groups. They met in Phoenix, Arizona, and planned to travel to Florida to seek work and eventually repay the "coyote" who had helped smuggle them into the United States. Defendant agreed to drive the van that would transport the aliens to Florida. In exchange, his debt to the coyote was to be forgiven. While traveling to Florida, the van was stopped in Nebraska for a routine traffic violation. The officers who conducted the stop discovered that the occupants of the van, including defendant, were illegal aliens. The occupants of the van were taken into custody and individually interviewed. Defendant admitted in his interview that he had illegally entered the United States, that he previously had been deported from the United States, and that he knew the others in the van were illegally in the United States. He stated that he was not being paid to drive the van, but that his debt for being smuggled into the United States was to be forgiven in exchange for his driving the van.

Defendant was charged in a two-count information with illegal transportation of an alien, in violation of 8 U.S.C. § 1324(a)(1), and illegal reentry following deportation,

in violation of 8 U.S.C. § 1326(a). Defendant entered into a plea agreement with the government. In exchange for his guilty plea to both counts in the information, the government agreed to the following:

> (a) [The government] will make non-binding recommendations to the Court that the defendant be given the benefit of his acceptance of responsibility and be sentenced to the lowest possible sentence within the United States Sentencing Guidelines range.

> (b) [The government] will make a non-binding recommendation to the Court that the defendant's sentencing not be enhanced under the United States Sentencing Guideline provision authorizing an enhancement when a defendant has committed the crime of transporting illegal aliens "for the purpose of commercial advantage and private gain."

Brief for Appellant, Addendum at 13-14 (Plea Agreement at 1-2, ¶ 2).

At the change of plea hearing on January 15, 1999, defendant proffered his guilty plea to both counts in the indictment. The district court delayed accepting the plea pending the preparation of the presentence investigation report (PSIR).

The PSIR recommended a reduction in defendant's offense level pursuant to U.S.S.G. § 2L1.1(b)(1), which provides in relevant part: "If (A) the offense was committed other than for profit . . . and (B) the base offense level is determined under subsection (a)(2),[2] decrease by **3** levels." The PSIR concluded that defendant's total offense level came to 10, that he had no criminal history points, and that his guideline range was 6 to 12 months. Neither party objected to the findings or calculations in the PSIR.

---

[2]Defendant's base offense level in the present case was determined under U.S.S.G. § 2L1.1(a)(2).

At the sentencing hearing, the district court accepted the plea and the plea agreement, but declined to reduce defendant's offense level under U.S.S.G. § 2L1.1(b)(1). The district court provided the following explanation for the denial of the three-level reduction:

> With regard to the matter of the three-level reduction under United States Sentencing Guidelines Section 2L1.1(b)(1), the commentary says that for purposes of this guideline . . . "the offense was committed other than for profit" means that there was no payment or expectation of payment for the smuggling, transporting or harboring of any of the unlawful aliens.

> . . . [I]t's clear here that there was to be a payment, the reduction of debt. That's clearly a payment. And the fact that he never . . . is going to get it because he didn't get them to Florida is of no consequence either because I don't think it requires a done deal. It simply requires either payment or expectation of payment.

> Now, . . . it didn't always read that way. The guideline, prior to May 1st, 1997 read that . . . "for profit" means for financial gain or commercial advantage.

> And I see there's some reference to financial gain or commercial advantage in the presentence investigation report. And that's not the meaning now under the commentary. That change was made 5-1-97 in the commentary from what I just said to the following: The defendant committed the offense other than for profit means that there was no payment or expectation of payment for the smuggling, transporting or harboring of any of the unlawful aliens.

> And then the commentary was again amended November 1, 1997, to read as it does now, the offense was committed other than for profit means that there is no payment or expectation of payment for the smuggling, transporting or harboring of any of the unlawful aliens.

Brief for Appellant, Addendum at 10-11 (transcript of sentencing hearing at 14-15). The district court concluded that defendant was not entitled to the three-level reduction.

The district court determined that defendant had a total offense level of 12, that he had no criminal history points, and that the applicable sentencing range under the guidelines was 12 to 18 months. Notwithstanding the government's recommendation that defendant receive the lowest possible sentence under the guidelines, the district court sentenced defendant to 18 months imprisonment.

In setting forth the conditions of defendant's supervised release, the district court ordered the following:

> The defendant shall comply with all rules, regulations and orders of the Immigration and Naturalization Service of the United States and, if deported, shall not reenter the United States or reside therein without first obtaining the written permission of the Attorney General of the United States. The imposition of this supervised release and all terms and conditions thereof are made subject to the defendant being deported and, if the defendant is deported, shall be applicable to the extent possible; and the same shall not constitute grounds or reasons for not deporting the defendant. *If the defendant is deported, his supervised release term shall be suspended during any period of time that he is outside of the United States and during any period of time that he is illegally within the United States and his whereabouts [are] unknown to the probation office.*

United States v. Juan-Manuel, No. 8:99CR-2 (D. Neb. Apr. 14, 1999) (judgment) (supervised release ¶ 9) (emphasis added).

Defendant objected to the above-italicized conditions of his supervised release, and the district court overruled his objection. Defendant timely appealed.

## Discussion

Denial of sentencing reduction under U.S.S.G. § 2L1.1(b)(1)

Defendant argues that the district court erred as a matter of law in declining to grant him a sentencing reduction pursuant to U.S.S.G. § 2L1.1(b)(1).  He maintains that, even considering the guideline commentary which became effective on November 1, 1997, a three-level reduction was warranted under the undisputed facts of the case.  Defendant cites United States v. Fountain, 83 F.3d 946, 952 (8th Cir. 1996), cert. denied, 520 U.S. 1253 (1997), for the proposition that words used in the guidelines are to be interpreted according to their common and ordinary meaning.  He next contends that the common and ordinary meaning of the word "profit," as used in § 2L1.1(b)(1), suggests the presence of a business venture from which one derives *excess* returns over expenditures.  This connotation, defendant argues, is consistent with the legislative history and the nature of illegal smuggling operations involving aliens. Defendant asserts that the guidelines have always distinguished between "those who make alien smuggling a business and those who do not."  Brief for Appellant at 24.  Defendant maintains that, in the present case, he did not seek financial gain or commercial advantage, nor was he motivated by the desire to make extra money by transporting other aliens – he was merely to receive the forgiveness of his debt to the coyote.  Furthermore, he contends that his case materially differs from other reported cases in which the § 2L1.1(b)(1) reduction has been denied.  For example, he argues, in United States v. Perez-Ruiz, 169 F.3d 1075 (7th Cir. 1999), the defendant, a United States citizen, agreed to transport illegal aliens to Chicago in exchange for something for which he otherwise would have had to pay – transportation to Chicago.  By contrast, defendant suggests, his primary motive for committing the offense in the present case was not an in-kind payment or profit because he would have traveled as a passenger in the van anyway.  Therefore, he concludes, the district court erred in denying him a three-level reduction under U.S.S.G. § 2L1.1(b)(1).

The government concedes that, at sentencing, it urged the district court to grant defendant the three-level reduction under U.S.S.G. § 2L1.1(b)(1). See Brief for Appellee at 5. However, the government now argues that the district court did not clearly err in its finding that the offense was not "other than for profit." Therefore, the government concludes, the denial of the three-level reduction should be affirmed.

We review for clear error the district court's finding as to whether defendant's offense was "other than for profit" in the present case. See, e.g., United States v. Lewis, 200 F.3d 1177, 1178 (8th Cir. 2000) (per curiam) (holding that district court made no clearly erroneous factual findings in denying the defendant a three-level reduction pursuant to § 2L1.1(b)(1)); United States v. Krcic, 186 F.3d 178 (2d Cir. 1999) ("Because we find that the district court's determination that Krcic smuggled the aliens for profit was not clearly erroneous, we affirm the district court."). Moreover, "[c]ommentary to the Guidelines is binding on the courts when it interprets or explains a guideline, unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." United States v. Triplett, 104 F.3d 1074, 1081-82 (8th Cir.) (internal quotation marks omitted), cert. denied, 520 U.S. 1236 (1997). As a general rule, we apply guideline commentary in effect at the time the offense was committed. See United States v. Kim, 193 F.3d 567, 578 (2d Cir. 1999).

In the present case, defendant and the government each mistakenly assumed at the time of the plea agreement that the pre-1997 commentary to § 2L1.1(b)(1) applied to defendant's case.[3] However, as the district court observed, that commentary had been superseded by a revision effective May 1, 1997, which was followed by another

---

[3]The plea agreement also reveals the parties' mistaken belief that, if the offense of transporting illegal aliens was committed for profit, then an enhancement of the base offense level is authorized. See Brief for Appellant, Addendum at 14 (Plea Agreement at 2). By contrast, the guidelines actually provide that, if the offense was committed "other than for profit," a decrease of the base offense level is authorized. See U.S.S.G. § 2L1.1(b)(1).

revision effective November 1, 1997.  See Brief for Appellant, Addendum at 10-11 (transcript of sentencing hearing); see also U.S.S.G. § 2L1.1, comment. (n.1); U.S.S.G. Appendix C, amendment 543 (effective May 1, 1997); id., amendment 561 (effective Nov. 1, 1997).

The commentary that applies in the present case is the November 1997 commentary because it was in effect at the time of defendant's transportation offense. See United States v. Kim, 193 F.3d at 578.  The November 1997 commentary more narrowly defines the circumstances in which the three-level reduction applies than did the pre-May 1997 commentary.  In particular, the pre-May 1997 version stated: "'For profit' means for financial gain or commercial advantage, but this definition does not include a defendant who commits the offense solely in return for his own entry or transportation"; that language was deleted in May 1997 and remained omitted from the commentary in the November 1997 revision.  See U.S.S.G. Appendix C, amendment 543 (effective May 1, 1997); id., amendment 561 (effective Nov. 1, 1997).  In light of this deletion, we read the November 1997 commentary to mean that a defendant who commits the relevant offense "solely in return for his own entry" may nevertheless be found to have committed the offense "for profit."

Moreover, we hold that the words "payment" and "expectation of payment," as used in the November 1997 commentary, can refer to something other than money.  See United States v. Perez-Ruiz, 169 F.3d at 1076 ("Compensation is payment, and whether in specie or in some other form does not matter.").  In the present case, defendant clearly expected to receive something other than money, yet having significant value, in exchange for transporting the other aliens.  He admitted that he had been promised the forgiveness of his debt to the coyote, which he owed for having been smuggled into the United States.  We therefore hold that the district court did not clearly err in finding that defendant's offense of illegally transporting aliens was not committed "other than for profit."  The district court's denial of the three-level sentencing reduction under U.S.S.G. § 2L1.1(b)(1) is affirmed.

<u>Imposition of tolling condition</u>

As noted above, the district court imposed the following condition of defendant's supervised release: "If the defendant is deported, his supervised release term shall be suspended during any period of time that he is outside of the United States and during any period of time that he is illegally within the United States and his whereabouts [are] unknown to the probation office." <u>United States v. Juan-Manuel</u>, No. 8:99CR-2 (D. Neb. Apr. 14, 1999) (judgment) (supervised release ¶ 9). The question of whether a district court has the sentencing authority to toll a criminal defendant's supervised release upon deportation or unknown illegal presence in the United States has not been addressed by the Eighth Circuit. To date, substantially similar issues have been considered by only two federal courts of appeals, reaching contrary results. <u>Compare United States v. Balogun</u>, 146 F.3d 141 (2d Cir. 1998) (<u>Balogun</u>) (holding that Congress did not provide for suspension of supervised release term upon deportation, nor is it within a sentencing court's discretionary authority), <u>with United States v. Isong</u>, 111 F.3d 428 (6th Cir.) (<u>Isong II</u>) (holding that sentencing court has discretionary authority under 18 U.S.C. § 3583(d) to suspend supervised release term upon deportation), <u>cert. denied</u>, 522 U.S. 883 (1997), <u>and United States v. Isong</u>, 111 F.3d 41 (6th Cir.) (<u>Isong I</u>) (same), <u>cert. denied</u>, 522 U.S. 883 (1997).

In the present case, defendant argues that the district court exceeded its sentencing authority by ordering his period of supervised release suspended upon deportation and during any period that he is outside or illegally within the United States. He urges this court, upon de novo review, to reverse the judgment and remand the case for resentencing.

Defendant notes, among other things, that supervised release is required to commence the very day the subject defendant is released from prison, <u>see</u> 18 U.S.C. § 3624(e), so that there is no lapse of time between imprisonment and supervision by the probation office. He further notes that Congress has expressly provided for tolling

of supervised release in two specific circumstances: (1) during an imprisonment of 30 days or more, see id., and (2) where a matter arises before the expiration of the supervised release period if, before its expiration, a warrant or summons has been issued on the basis of an alleged violation, see 18 U.S.C. § 3583(i). By contrast, defendant argues, there is no specific provision for tolling while an alien is outside of the United States, even though Congress is obviously capable of authorizing such tolling. Thus, he concludes, "if Congress had intended for supervised release to be tolled during an alien's exclusion from the country, it would have expressly provided for such tolling." Brief for Appellant at 15 (citing, e.g., United States v. Davis, 978 F.2d 415, 417-18 & n.3 (8th Cir. 1992) (Davis) ("The maxim of statutory construction expressio unius est exclusio alterius is followed here. This maxim dictates that an expressly stated exception to liability impliedly excludes all other exceptions.")). Defendant further maintains that to toll a defendant's supervised release during exclusion from the United States does not comport with 18 U.S.C.§ 3583(d) because it materially differs in nature from the conditions of supervised release that are expressly authorized, each of which either mandates or forbids a certain type of conduct. For these reasons and others, defendant argues, we should adopt the reasoning and conclusion of the Second Circuit in Balogun, 146 F.3d at 143-47.

The government, on the other hand, argues that the district court's imposition of the challenged condition of supervised release should be reviewed for an abuse of discretion. The government relies upon United States v. Cooper, 171 F.3d 582, 585 (8th Cir. 1999), for the general proposition that a sentencing court has discretion to impose special conditions of supervised release if the conditions are reasonably related to the sentencing factors enumerated by the statute, involve no greater deprivation of liberty than is reasonably necessary, and are consistent with the Sentencing Commission's pertinent policy statements. Under Cooper, 171 F.3d at 586, the government contends, a special condition need only "relate to" the goals of rehabilitation and protection. See Brief for Appellee at 12. In the present case, the government maintains, the tolling condition not only relates to the goals of

rehabilitation and protection, it also advances the goal of deterrence, which, under 18 U.S.C. § 3553(a)(2)(B), is specifically recognized as a factor to be considered when imposing sentence. The government further argues that the tolling condition is consistent with 8 U.S.C. § 1231(a)(4)(A), which requires that illegal aliens be deported from the United States after completion of their term of imprisonment, and that it prevents unwarranted sentencing disparities among similarly situated criminal defendants in furtherance of goals advanced in 18 U.S.C. §§ 3553(a)(6) and 3583(c). See Brief for Appellee at 12-13.

Whether the district court had the authority to impose the controverted tolling condition in the exercise of its discretion is a legal question subject to de novo review. Cf. United States v. Yankton, 986 F.2d 1225, 1230 (8th Cir. 1993) ("The legal question of whether the district court had the authority to depart upward in the exercise of its discretion . . . is reviewed by this court de novo."). We begin with the governing statutory provision, 18 U.S.C. § 3583(d). There is nothing in § 3583(d) which *expressly* authorizes the tolling of a criminal defendant's supervised release term upon deportation or exclusion from or unknown illegal presence in the United States. To determine whether or not such authority is implied, we must interpret the following statutory language providing sentencing courts with additional discretionary authority:

> The court may order, as a further condition of supervised release, to the extent that such condition–
>
> > (1) is reasonably related to the factors set forth in [18 U.S.C. §] 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);
> >
> > (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in [18 U.S.C. §] 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

-11-

> (3) is consistent with any pertinent policy statements issued
> by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(a);
>
> any condition set forth as a discretionary condition of probation in
> [18 U.S.C. §] 3563(b)(1) through (b)(10) and (b)(12) through (b)(20), and
> any other condition it considers to be appropriate. If an alien defendant
> is subject to deportation, the court may provide, as a condition of
> supervised release, that he be deported and remain outside the United
> States, and may order that he be delivered to a duly authorized
> immigration official for such deportation.

18 U.S.C. § 3583(d).

We agree with the Second Circuit that the authorization for sentencing courts to impose "any other condition [of supervised release] it considers to be appropriate" must be read in the overall context of the statute. See Balogun 146 F.3d at 144-47. Focusing on the meaning of the word "condition" within that statutory phrase, the Second Circuit noted: "we presume that Congress does not employ the same word to convey different meanings within the same statute." Id. at 145. Because "virtually every 'condition' mentioned in the statute as a possible 'condition of supervised release' is one that expressly confines the conduct of the defendant," the Second Circuit reasoned, "the phrase 'any other condition' was likewise intended to refer to other requirements that the defendant do or refrain from doing specified acts." Id. The only condition of supervised release which is mentioned in the statute and yet does not directly require or prohibit certain conduct by the defendant states the following: "If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation." 18 U.S.C. § 3583(d). As the Second Circuit explained, the "principal thrust" of this condition is the requirement that the defendant remain outside the United States, while the provision for deportation "is merely the necessary precursor to the constraint imposed on the conduct of the defendant." Balogun, 146 F.3d at 145. When

-12-

viewed in this manner, the language referring to deportation remains consistent with the Second Circuit's conclusion that the word "condition" is used in 18 U.S.C. § 3583(d) to refer to "requirements that the defendant do or refrain from doing specified acts." Id.

Moreover, as the dissenting judge in Isong II reasoned, the language of § 3583(d) logically precludes the possibility that Congress intended to authorize suspension of the supervised release term upon deportation. Congress has specifically authorized the district courts to order a defendant to be deported and to remain outside the United States as conditions of supervised release. Furthermore, a supervised release order cannot simultaneously be suspended and actively in effect. It therefore follows that Congress could not have intended to allow a defendant to be excluded from the United States as a *condition* of supervised release while, at the same time, allow all conditions of supervised release to be suspended for the duration of that exclusion. See Isong II, 111 F.3d at 431-33 (Moore, J., dissenting).

Finally, we are compelled by the fact that, while Congress has nowhere expressly mentioned such tolling upon a defendant's deportation, it has expressly provided for tolling of supervised release in two other specific contexts. See 18 U.S.C. § 3624(e) (providing for tolling of supervised release during an imprisonment of 30 days or more); id. § 3583(i) (providing for tolling where a matter arises before the expiration of the supervised release period if, before its expiration, a warrant or summons has been issued on the basis of an alleged violation). Applying the rule of statutory interpretation "expressio unius est exclusio alterius" (the expression of one implicitly excludes others), see Davis, 978 F.2d at 418 n.3, we join the Second Circuit and conclude that Congress did not intend to authorize sentencing courts to suspend a defendant's period of supervised release upon deportation and during any period of exclusion from or unknown presence in the United States. Therefore, notwithstanding the district court's sound reasons for imposing the tolling condition at issue in the

-13-

present case, we hold, upon careful de novo review, that the district court did not have the authority to impose it.

## Conclusion

For the reasons stated, we affirm in part and reverse in part. We modify the judgment of the district court to delete the condition of supervised release which states: "If the defendant is deported, his supervised release term shall be suspended during any period of time that he is outside of the United States and during any period of time that he is illegally within the United States and his whereabouts [are] unknown to the probation office." United States v. Juan-Manuel, No. 8:99CR-2 (D. Neb. Apr. 14, 1999) (judgment) (supervised release ¶ 9). The judgment of the district court is affirmed as modified.

A true copy.

Attest:

U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-